Butcher *v.* Bloom.

306

Opinion Per Curiam; February 4, 1966:

Our previous opinion in this case[1] sets forth the nature, issues, and background of the litigation and obviates the need for extended discussion in the present sequel. That opinion embodied the conclusion of this Court that certain acts of the Legislature,[2] providing for the apportionment[3] of both houses of the General Assembly of this Commonwealth, resulted in an impairment of the right to vote in conflict with the Federal Constitution and controlling decisions of the Supreme Court of the United States.[4] We therefore held such acts invalid and void.[5]

Having so concluded, this Court was thus confronted with the task of fashioning appropriate relief. We

[1] 415 Pa. 438, 203 A. 2d 556 (1964), filed September 29, 1964.

[2] The Act of January 9, 1964, No. 1, P. L. (1963) 1419, 25 P.S. §2221 (Supp. 1965), providing for the apportionment of legislative seats in the House of Representatives of the General Assembly, and the Act of January 9, 1964, No. 2, P. L. (1963) 1432, 25 P.S. §2217 (Supp. 1965), providing for the districting of legislative seats in the Senate of the General Assembly.

[3] The preferable terms are "districting" as applied to the formulation of senatorial districts and "apportionment" as to House districts. This opinion employs the terms interchangeably.

[4] See the following cases cited in our previous opinion: *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362 (1964); *WMCA, Inc. v. Lomenzo*, 377 U.S. 633, 84 S. Ct. 1418 (1964); *Maryland Committee for Fair Representation v. Tawes*, 377 U.S. 656, 84 S. Ct. 1429 (1964); *Davis v. Mann*, 377 U.S. 678, 84 S. Ct. 1441 (1964); *Roman v. Sincock*, 377 U.S. 695, 84 S. Ct. 1449 (1964); *Lucas v. Forty-fourth General Assembly of Colorado*, 377 U.S. 713, 84 S. Ct. 1459 (1964). See also *Jordan v. Silver*, 381 U.S. 415, 85 S. Ct. 1572 (1965) (per curiam); *Pinney v. Butterworth*, 378 U.S. 564, 84 S. Ct. 1918 (1964) (per curiam); *Hearne v. Smylie*, 378 U.S. 563, 84 S. Ct. 1917 (1964) (per curiam); *Marshall v. Hare*, 378 U.S. 561, 84 S. Ct. 1912 (1964) (per curiam); *Germano v. Kerner*, 378 U.S. 560, 84 S. Ct. 1908 (1964) (per curiam); *Williams v. Moss*, 378 U.S. 558, 84 S. Ct. 1907 (1964) (per curiam); *Nolan v. Rhodes*, 378 U.S. 556, 84 S. Ct. 1906 (1964) (per curiam); *Meyers v. Thigpen*, 378 U.S. 554, 84 S. Ct. 1905 (1964) (per curiam).

[5] 415 Pa. at 454-55, 457-58, 203 A. 2d at 565-66, 567.

determined, however, that the imminence of the 1964 general election required the utilization of the apportionment plans contained in those acts, notwithstanding their invalidity, in order to prevent serious disruption of election processes and essential governmental functions. Moreover, we considered it appropriate that the Legislature, the organ of government with the primary responsibility for the task of reapportionment,[6] be afforded an additional opportunity to enact a constitutional reapportionment plan.

Accordingly, while retaining jurisdiction, we deferred further judicial action in order to afford an opportunity for appropriate and timely legislation on the part of the General Assembly.[7] To assist in that task, we set forth guidelines for constitutional reapportionment as mandated by the Federal Constitution and decisions of the Supreme Court of the United States.[8]

Thus, our previous opinion invited and urged legislative action. And while we acknowledged the practical difficulties to be confronted, we expressed the hope that further judicial intervention would be rendered unnecessary by prompt constitutional legislation. At the same time, we sought to make clear that our reluctance to intrude into an area of primarily legislative re-

---

[6] "The task of reapportionment is not only the responsibility of the Legislature, it is also a function which can be best accomplished by that elected branch of government. The composition of the Legislature, the knowledge which its members from every part of the state bring to its deliberations, its techniques for gathering information, and other factors inherent in the legislative process, make it the most appropriate body for the drawing of lines, dividing the state into senatorial and representative districts." 415 Pa. at 461, 203 A. 2d at 569.

[7] The approach adopted in our previous disposition was approved by the Supreme Court of the United States. See *Scranton v. Drew,* 379 U.S. 40, 85 S. Ct. 207 (1964).

[8] 415 Pa. at 462-65, 203 A. 2d at 570-71.

sponsibility would not deter this Court from proceeding with the task of reapportionment in the event that the Legislature failed to do so. We concluded, therefore, that should the Legislature fail to enact a constitutionally valid reapportionment "not later than September 1, 1965," this Court would take appropriate steps to ensure that the individual voters of this Commonwealth are afforded their constitutional right to cast an equally weighted vote.[9]

The deadline set forth in our earlier opinion passed without enactment of the required legislation. Accordingly, pursuant to our retained jurisdiction, this Court issued an order on September 29, 1965 notifying the parties of our intention to proceed with the task of fashioning such affirmative relief as would be necessary to ensure a constitutionally valid legislative apportionment for the forthcoming primary and general elections.

In order to secure assistance in fashioning such relief, our order permitted the parties and all others in interest to submit proposals for the statewide reapportionment of both houses of the General Assembly. Thereafter, numerous and widely divergent plans were filed with this Court. Each proposal was carefully considered and evaluated in the course of our deliberation.

In the formulation of the reapportionment plans herein adopted, we have been guided by the dictates of the Federal Constitution and the controlling decisions of the Supreme Court of the United States. Our primary concern has been to provide for substantial equality of population among legislative districts. At the same time, we have sought to maintain the integrity of political subdivisions and to create compact districts of contiguous territory, insofar as these goals

---

[9] Id. at 468, 203 A. 2d at 573.

could be realized under the circumstances of the population distribution of this Commonwealth. We believe such plans to be constitutionally valid and sound.

Accordingly, pursuant to the mandate and principles set forth in our prior opinion, we hereby order that the attached Appendix A shall be the reapportionment plan for the House of Representatives of the General Assembly of the Commonwealth of Pennsylvania for the forthcoming 1966 primary and general elections. We further order that the attached Appendix B shall be the districting plan for the Senate of the General Assembly of the Commonwealth of Pennsylvania for the forthcoming 1966 primary and general elections. The districting plan contained in Appendix B is subject to the following qualification and direction: the 50 senatorial districts therein contained are hereby divided into two classes, those districts designated by even numbers shall constitute one class and those districts designated by odd numbers shall constitute the other class. All 50 senatorial seats shall be filled in the forthcoming election,[10] but senators representing odd numbered senatorial districts shall be elected to serve a two year term and senators representing even numbered senatorial districts shall be elected to serve for a constitutional four year term.[11]

It is further ordered that the plans set forth in Appendices A and B and hereby adopted shall remain in force and effect until constitutionally altered.[12]

[10] It is well established that existing de facto office holders possess no vested tenure in public office. See *Hughes v. WMCA* and *Davis v. Mann*, 379 U.S. 694 (1965) (per curiam).

[11] At the expiration of the terms of office herein provided for senatorial districts designated by odd numbers, the elective term for such districts shall revert to the constitutional term of four years, subject to the constitutional provisions respecting the filling of vacancies. Pa. Const. Art. II, §2.

[12] The reapportionment and districting plans contained in Appendices A and B are based on the United States decennial cen-

## APPENDIX A

## HOUSE OF REPRESENTATIVES*

The House of Representatives shall be apportioned as follows:

(1) The First Representative District shall consist of the first and second wards and the fourth, fifth, sixth, seventh, eighth, ninth, tenth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth districts of the fifth ward of the City of Erie, in the County of Erie. (Total Population: 55,267)

(2) The Second Representative District shall consist of the third and sixth wards and the first, second and third districts of the fifth ward of the City of Erie in the County of Erie. (Total Population: 55,381)

(3) The Third Representative District shall consist of the fourth ward and the eleventh and twelfth districts of the fifth ward of the City of Erie, and the

sus of 1960. Any township, borough, city or ward created since such census, and not specifically provided for in said appendices, shall form a part of the district to which the territory comprised within such township, borough, city or ward is allotted by the provisions of the plans herein adopted, according to the political division existing at the time of such census; and any township, borough, city or ward, or any portion thereof, annexed to any other township, borough, city or ward since such census, shall form a part of the district to which the territory comprised within such township, borough, city or ward, or portion thereof, is allotted by the provisions of the plans herein adopted, according to the political division existing at the time of such census. Except as otherwise provided, where a township, borough, or city traverses county lines, the respective portions of municipalities so divided shall be included within the senatorial or representative district to which the county in which such portions are located is herein allocated.

    * Total Number of Districts:          203
      Ratio Per District:             56,597
      Total Population of Commonwealth:     11,319,366

Township of Millcreek, in the County of Erie. (Total Population: 56,233)

(4) The Fourth Representative District shall consist of the City of Corry, the Boroughs of Elgin, Mill Village, North East, Union City, Waterford, Wattsburg and Wesleysville, and the Townships of Amity, Concord, Greene, Greenfield, Harborcreek, Lawrence Park, LeBoeuf, North East, Union, Venango, Waterford and Wayne, in the County of Erie. (Total Population: 53,386)

(5) The Fifth Representative District shall consist of the Boroughs of Albion, Cranesville, East Springfield, Edinboro, Fairview, Girard, Lake City, Middleboro, Platea, and the Townships of Conneaut, Elk Creek, Fairview, Franklin, Girard, McKean, Springfield, Summit and Washington in the County of Erie, and the Boroughs of Cambridge Springs, Conneaut Lake, Conneautville, Linesville, Saegertown, Springboro and Venango, and the Townships of Beaver, Cambridge, Conneaut, Cussewago, East Fallowfield, Hayfield, North Shenango, Pine, Sadsbury, South Shenango, Spring, Summerhill, Summit, Venango, West Fallowfield and West Shenango, in the County of Crawford. (Total Population: 52,872)

(6) The Sixth Representative District shall consist of the Cities of Meadville and Titusville, the Boroughs of Blooming Valley, Centerville, Cochranton, Hydetown, Spartansburg, Townville and Woodcock, and the Townships of Athens, Bloomfield, East Fairfield, East Mead, Fairfield, Greenwood, Oil Creek, Randolph, Richmond, Rockdale, Rome, Sparta, Steuben, Troy, Union, Vernon, Wayne, West Mead and Woodcock, in the County of Crawford. (Total Population: 55,499)

(7) The Seventh Representative District shall consist of the Cities of Farrell and Sharon, the Boroughs of Clarksville (also known as Clark), Sharpsville and

Wheatland, and the Townships of Hickory and South Pymatuning, in the County of Mercer. (Total Population: 63,345)

(8) The Eighth Representative District shall consist of the Boroughs of Fredonia, Greenville, Grove City, Jackson Center, Jamestown, New Lebanon, Sandy Lake, Sheakleyville, Stoneboro and West Middlesex, and the Townships of Coolspring, Deer Creek, Delaware, East Lackawannock, Fairview, Findley, French Creek, Greene, Hempfield, Jackson, Jefferson, Lackawannock, Lake, Liberty, Mercer, Mill Creek, New Vernon, Otter Creek, Perry, Pine, Pymatuning, Salem, Sandy Creek, Sandy Lake, Shenango, Springfield, Sugar Grove, West Salem, Wilmington, Wolf Creek and Worth, in the County of Mercer. (Total Population: 64,174)

(9) The Ninth Representative District shall consist of the City of New Castle, the Borough of South New Castle, and the Townships of Taylor and Union, in the County of Lawrence. (Total Population: 54,308)

(10) The Tenth Representative District shall consist of the Boroughs of Bessemer, Ellport, Ellwood City, Enon City, New Wilmington, Volant and Wampum, and the Townships of Big Beaver, Hickory, Little Beaver, Mahoning, Neshannock, North Beaver, Perry, Plain Grove, Pulaski, Scott, Shenango, Slippery Rock, Washington, Wayne and Wilmington, in the County of Lawrence. (Total Population: 58,657)

(11) The Eleventh Representative District shall consist of the City of Butler, the Boroughs of Chicora, East Butler, Fairview, Karns City, Petrolia and West Sunbury, and the Townships of Butler, Center, Clay, Clearfield, Concord, Donegal, Fairview, Oakland and Summit, in the County of Butler. (Total Population: 56,619)

(12) The Twelfth Representative District shall consist of the Boroughs of Bruin, Callery, Cherry Valley, Connoquenessing, Eauclaire, Evans City, Harmony, Harrisville, Mars, Portersville, Prospect, Saxonburg, Slippery Rock, Valencia, West Liberty and Zelienople, and the Townships of Adams, Allegheny, Brady, Buffalo, Cherry, Clinton, Connoquenessing, Cranberry, Forward, Franklin, Jackson, Jefferson, Lancaster, Marion, Mercer, Middlesex, Muddycreek, Parker, Penn, Slippery Rock, Venango, Washington, Winfield and Worth, in the County of Butler. (Total Population: 58,020)

(13) The Thirteenth Representative District shall consist of the Boroughs of Beaver, Big Beaver, Bridgewater, Darlington, Fallston, Glasgow, Homewood, Industry, Koppel, Midland, Monaco, New Galilee, and Patterson Heights, and the Townships of Borough, Brighton, Darlington, Ohio, Patterson, Potter and South Beaver, in the County of Beaver. (Total Population: 50,198)

(14) The Fourteenth Representative District shall consist of the City of Beaver Falls, the Boroughs of Eastville, Ellwood City, New Brighton and West Mayfield, and the Townships of Chippewa, Daugherty, Franklin, Marion, North Sewickley, Pulaski and White, in the County of Beaver. (Total Population: 50,584)

(15) The Fifteenth Representative District shall consist of the Boroughs of Aliquippa, Frankfort Springs, Georgetown, Hookstown, Shippingport and South Heights, and the Townships of Center, Greene, Hanover, Hopewell, Independence and Raccoon, in the County of Beaver. (Total Population: 54,669)

(16) The Sixteenth Representative District shall consist of the Boroughs of Ambridge, Baden, Conway, East Rochester, Economy, Freedom and Rochester, and the Townships of Harmony, New Sewickley and Roches-

ter, in the County of Beaver. (Total Population: 51,-497)

(17) The Seventeenth Representative District shall consist of the third, fifth, seventh, ninth and tenth election districts of the twenty-first ward and the twenty-sixth and twenty-seventh wards of the City of Pittsburgh, in the County of Allegheny. (Total Population: 55,825)

(18) The Eighteenth Representative District shall consist of the first, second, fourth and sixth election districts of the twenty-first ward, and the twenty-second, twenty-third, twenty-fourth and twenty-fifth wards of the City of Pittsburgh, in the County of Allegheny. (Total Population: 53,315)

(19) The Nineteenth Representative District shall consist of the first, second, third and fifth wards, and the first, second, third, fourth, fifth, sixth and seventh election districts of the eighth ward, of the City of Pittsburgh, in the County of Allegheny. (Total Population: 57,796)

(20) The Twentieth Representative District shall consist of the sixth, ninth, and tenth wards and the eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth election districts of the eighth ward of the City of Pittsburgh, in the County of Allegheny. (Total Population: 57,499)

(21) The Twenty-first Representative District shall consist of the seventh and eleventh wards, and the sixth, seventh, eighth, ninth, tenth and twentieth election districts of the fourth ward of the City of Pittsburgh, in the County of Allegheny. (Total Population: 50,376)

(22) The Twenty-second Representative District shall consist of the thirty-first ward and the first, second, third, fourth, fifth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth election districts of the fourth ward

and the third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth election districts of the fifteenth ward of the City of Pittsburgh, in the County of Allegheny. (Total Population: 51,251)

(23) The Twenty-third Representative District shall consist of the fourteenth ward and the first, second and fifth election districts of the fifteenth ward of the City of Pittsburgh, in the County of Allegheny. (Total Population: 51,801)

(24) The Twenty-fourth Representative District shall consist of the twelfth and thirteenth wards of the City of Pittsburgh, in the County of Allegheny. (Total Population: 50,690)

(25) The Twenty-fifth Representative District shall consist of the sixteenth, seventeenth and eighteenth wards of the City of Pittsburgh, and the Borough of Mt. Oliver, in the County of Allegheny. (Total Population: 61,198)

(26) The Twenty-sixth Representative District shall consist of the fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-ninth, thirtieth and thirty-first election districts of the nineteenth ward and the twenty-ninth, thirtieth and thirty-second wards of the City of Pittsburgh, in the County of Allegheny. (Total Population: 63,423)

(27) The Twenty-seventh Representative District shall consist of the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and twenty-eighth election districts of the nineteenth ward and the twentieth and twenty-eighth wards of the City of Pittsburgh, in the County of Allegheny. (Total Population: 57,138)

(28) The Twenty-eighth Representative District shall consist of the Boroughs of Bell Acres, Ben Avon,

Bradford Woods, Edgeworth, Emsworth, Franklin Park, Glenfield, Haysville, Leetsdale, Osborne, Sewickley, Sewickley Heights, Sewickley Hills and the Townships of Aleppo, Kilbuck, Leet, Marshall, McCandless, Ohio, Pine and Richland, in the County of Allegheny. (Total Population: 57,952)

(29) The Twenty-ninth Representative District shall consist of the Boroughs of Avalon, Bellevue, Ben Avon Heights, Millvale and West View, and the Townships of Reserve and Ross, in the County of Allegheny. (Total Population: 63,587.)

(30) The Thirtieth Representative District shall consist of the Boroughs of Aspinwall, Etna, Fox Chapel and Sharpsburg and the Townships of Hampton, O'Hara and Shaler, in the County of Allegheny. (Total Population: 62,905)

(31) The Thirty-first Representative District shall consist of the Boroughs of Brackenridge, Oakmont and Tarentum, and the Townships of Fawn, Frazer, Harmar, Harrison, Indiana and West Deer, in the County of Allegheny. (Total Population: 60,304)

(32) The Thirty-second Representative District shall consist of the Boroughs of Blawnox and Verona, and the Township of Penn Hills, in the County of Allegheny. (Total Population: 57,629)

(33) The Thirty-third Representative District shall consist of the Boroughs of Cheswick, Monroeville, Pitcairn, Plum, Springdale, Wall and Wilmerding, and the Townships of East Deer and Springdale, in the County of Allegheny. (Total Population: 57,070)

(34) The Thirty-fourth Representative District shall consist of the Boroughs of Chalfont, Churchill, Forest Hills, Wilkinsburg and East Pittsburgh, and the Township of Wilkins, in the County of Allegheny. (Total Population: 56,098)

(35) The Thirty-fifth Representative District shall consist of the Boroughs of Braddock, East Mc-

Keesport, North Braddock, Turtle Creek and that part of the Borough of Trafford in Allegheny County and the Township of North Versailles, in the County of Allegheny. (Total Population: 53,341)

.. (36) The Thirty-sixth Representative District shall consist of the Boroughs of Braddock Hills, Edgewood, Homestead, Munhall, Swissvale and West Homestead, in the County of Allegheny. (Total Population: 51,596)

(37) The Thirty-seventh Representative District shall consist of the City of McKeesport, the Boroughs of Versailles and White Oak, and the Township of South Versailles, in the County of Allegheny. (Total Population: 57,350)

(38) The Thirty-eighth Representative District shall consist of the City of DuQuesne and the Boroughs of Dravosburg, Rankin, West Mifflin and Whitaker, in the County of Allegheny. (Total Population: 53,060)

(39) The Thirty-ninth Representative District shall consist of the City of Clairton, the Boroughs of Elizabeth, Glassport, Liberty, Lincoln and Port Vue, and the Townships of Elizabeth and Forward, in the County of Allegheny. (Total Population: 60,200)

(40) The Fortieth Representative District shall consist of the Boroughs of Bethel Park, Jefferson, Pleasant Hills and West Elizabeth and the Townships of Snowden and Upper St. Clair, in the County of Allegheny. (Total Population: 57,095)

(41) The Forty-first Representative District shall consist of the Boroughs of Baldwin, Brentwood and Whitehall, in the County of Allegheny. (Total Population: 54,270)

(42) The Forty-second Representative District shall consist of the Boroughs of Dormont and Castle Shannon and the Townships of Mt. Lebanon and Baldwin, in the County of Allegheny. (Total Population: 63,299)

(43) The Forty-third Representative District shall consist of the Boroughs of Carnegie, Crafton, Green Tree, Ingram, Rosslyn Farms and Thornburg and the Township of Scott, in the County of Allegheny. (Total Population: 50,301)

(44) The Forty-fourth Representative District shall consist of the Boroughs of Bridgeville, Heidelberg, Oakdale and that part of the Borough of McDonald in Allegheny County and the Townships of Collier, Crescent, Findlay, Moon, North Fayette and South Fayette, in the County of Allegheny. (Total Population: 51,519)

(45) The Forty-fifth Representative District shall consist of the Boroughs of Coraopolis and McKees Rocks and the Townships of Kennedy, Neville, Robinson and Stowe, in the County of Allegheny. (Total Population: 50,699)

(46) The Forty-sixth Representative District shall consist of the Boroughs of Burgettstown, Canonsburg, Claysville, McDonald (part of), Midway, West Alexander, and West Middletown and the Townships of Blaine, Cecil, Cross Creek, Donegal, Hanover, Hopewell, Independence, Jefferson, Mt. Pleasant, Robinson, and Smith, in the County of Washington. (Total Population: 50,156)

(47) The Forty-seventh Representative District shall consist of the City of Washington, the Boroughs of E. Washington and Houston, and the Townships of Buffalo, Canton, Chartiers, N. Franklin and South Franklin, in the County of Washington. (Total Population: 49,398)

(48) The Forty-eighth Representative District shall consist of the City of Monongahela, the Boroughs of Beallsville, Bentleyville, Cokeburg, Ellsworth, Finleyville and New Eagle, and the Townships of N. Bethlehem, N. Strubane, Nottingham, Peters, Somerset, S. Strubane and Union, in the County of Washington. (Total Population: 49,117)

(49) The Forty-ninth Representative District shall consist of the Boroughs of Allenport, California, Centreville, Charleroi, Coal Center, Donora, Dunlevy, Elco, Long Branch, N. Charleroi, Roscoe, Spears, Stockdale, Twilight and W. Brownsville, and the Townships of Carroll, Fallowfield and W. Pike Run, in the County of Washington. (Total Population: 55,264)

(50) The Fiftieth Representative District shall consist of the Boroughs of Deemston and Marianno, and the Townships of Amwell, E. Bethlehem, E. Finley, Morris, W. Bethlehem and W. Finley, in the County of Washington, and all of Greene County. (Total Population: 52,760)

(51) The Fifty-first Representative District shall consist of the City of Uniontown, the Boroughs of Belle Vernon, Fayette City and Newell, and the Townships of Jefferson, Menallen, Redstone, South Union and Washington, in the County of Fayette. (Total Population: 55,113)

(52) The Fifty-second Representative District shall consist of the City of Connellsville, the Boroughs of Dawson, Dunbar, Everson, Perryopolis, S. Connellsville and Vanderbilt, and the Townships of Connellsville, Dunbar, Franklin, Lower Tyrone, N. Union, Perry and Upper Tyrone, in the County of Fayette. (Total Population: 54,958)

(53) The Fifty-third Representative District shall consist of the Boroughs of Brownsville, Fairchance, Masontown, Markleysburg, Ohiopyle, Point Marion and Smithfield, and the Townships of Brownsville, Bullskin, Georges, German, Henry Clay, Luzerne, Nicholson, Saltlick, Springhill, Springfield, Stewart and Wharton, in the County of Fayette. (Total Population: 59,269)

(54) The Fifty-fourth Representative District shall consist of the Cities of Arnold, Lower Burrell and New Kensington, the Boroughs of East Vandergrift, Hyde

Park, Vandergrift and West Leechburg, and the Township of Allegheny, in the County of Westmoreland. (Total Population: 62,373)

(55) The Fifty-fifth Representative District shall consist of the Boroughs of Avonmore, Derry, Export, Latrobe, New Alexandria, New Salem and Oklahoma, and the Townships of Bell, Derry, Franklin, Loyalhanna, Upper Burrell and Washington, in the County of Westmoreland. (Total Population: 55,045)

(56) The Fifty-sixth Representative District shall consist of the City of Jeannette, the Boroughs of Irwin, N. Irwin, Manor and Trafford (part of), and the Townships of N. Huntingdon and Penn, in the County of Westmoreland. (Total Population: 59,859)

(57) The Fifty-seventh Representative District shall consist of the City of Greensburg, the Boroughs of Adamsburg, Arona, Hunker, Penn, S. Greensburg, S. W. Greensburg and Youngwood, and the Townships of Hempfield and Salem, in the County of Westmoreland. (Total Population: 63,261)

(58) The Fifty-eighth Representative District shall consist of the City of Monessen, the Boroughs of Madison, N. Belle Vernon, Scottdale, Smithton, Suterville and W. Newton, and the Townships of E. Huntingdon, Rostraver, Sewickley and S. Huntingdon, in the County of Westmoreland. (Total Population: 63,044)

(59) The Fifty-ninth Representative District shall consist of the Boroughs of Bolivar, Donegal, Ligonier, Mount Pleasant, New Florence, Seward and Youngstown, and the Townships of Cook, Donegal, Fairfield, Ligonier, Mount Pleasant, St. Clair and Unity, in the County of Westmoreland. (Total Population: 49,047)

(60) The Sixtieth Representative District shall consist of the Boroughs of Apollo, North Apollo, Leechburg, Ford Cliff and Ford City, and the Townships of Manor, Bethel, Gilpin, Parks and Kiskiminetas, in the County of Armstrong, and the Boroughs of Saltsburg,

Jacksonville, Homer City and Blairsville, and the Townships of Young, Conemaugh, Blacklick, Center and Burrell, in the County of Indiana. (Total Population: 53,959)

(61) The Sixty-first Representative District shall consist of the City of Parker City, the Boroughs of Applewold, Atwood, Dayton, Elderton, Freeport, Kittanning, Manorville, Rural Valley, South Bethlehem, West Kittanning and Worthington, and the Townships of Boggs, Bradys Bend, Burrell, Cadogan, Cowenshannock, East Franklin, Hovey, Kittanning, Madison, Mahoning, North Buffalo, Perry, Pine, Plumcreek, Rayburn, Redbank, South Bend, South Buffalo, Sugarcreek, Valley, Washington, Wayne and West Franklin, in the County of Armstrong. (Total Population: 48,363)

(62) The Sixty-second Representative District shall consist of the Boroughs of Armagh, Cherry Tree, Clymer, Creekside, Glen Campbell, Indiana, Marion Center, Plumville, Shelocta and Smicksburg, and the Townships of Armstrong, Banks, Brushvalley, Buffington, Canoe, Cherryhill, East Mahoning, East Wheatfield, Grant, Green, Montgomery, North Mahoning, Pine, Rayne, South Mahoning, Washington, West Mahoning, West Wheatfield and White, in the County of Indiana. (Total Population: 52,568)

(63) The Sixty-third Representative District shall consist of the Boroughs of Pleasantville and Rouseville, and the Townships of Plum, Cherry Tree, Okland, Cornplanter, Oil Creek, Allegheny, President, and Pinegrove, in the County of Venango, and all of the County of Clarion. (Total Population: 48,098)

(64) The Sixty-fourth Representative District shall consist of the Cities of Franklin and Oil City, the Boroughs of Clintonville, Cooperstown, Polk, Emlenton and Utica, and the Townships of Canal, Clinton, Cranberry, Frenchcreek, Irwin, Jackson, Mineral,

Richland, Rockland, Sandycreek, Scrubgrass, Sugar-creek and Victory, in the County of Venango. (Total Population: 54,605)

(65) The Sixty-fifth Representative District shall consist of the County of Forest and the County of Warren. (Total Population: 50,067)

(66) The Sixty-sixth Representative District shall consist of the City of DuBois and the Township of Sandy, in the County of Clearfield and all of the County of Jefferson. (Total Population: 62,781)

(67) The Sixty-seventh Representative District shall consist of the County of McKean. (Total Population: 54,517)

(68) The Sixty-eighth Representative District shall consist of the County of Potter and the County of Tioga. (Total Population: 53,097)

(69) The Sixty-ninth Representative District shall consist of the Boroughs of Addison, Berlin, Boswell, Casselman, Central City, Confluence, Garrett, Hooversville, Jennerstown, Meyersdale, New Baltimore, New Centerville, Rockwood, Salisbury, Shanksville, Somerset, Stoystown, Ursina and Wellersburg, and the Townships of Addison, Allegheny, Black, Brothersvalley, Elk Lick, Fairhope, Greenville, Jefferson, Jenner, Larimer, Lincoln, Lower Turkeyfoot, Middlecreek, Milford, Northampton, Quemahoning, Shade, Somerset, Southampton, Stonycreek, Summit and Upper Turkeyfoot, in the County of Somerset. (Total Population: 57,355)

(70) The Seventieth Representative District shall consist of the Boroughs of Benson, Paint and Windber, and the Townships of Conemaugh, Ogle and Paint, in the County of Somerset, and the Boroughs of Ebensburg, Ehrenfeld, Scalp Level, South Fork, Summerhill and Wilmore, and the Townships of Adams, Cambria, Croyle, Richland and Summerhill in the County of Cambria. (Total Population: 56,018)

324

(71) The Seventy-first Representative District shall consist of the City of Johnstown and the Borough of Dale, in the County of Cambria. (Total Population: 56,756)

(72) The Seventy-second Representative District shall consist of the Boroughs of Brownstown, Daisytown, East Conemaugh, Ferndale, Franklin, Geistown, Lorain, Nanty-Glo, Southmont, Vintondale and Westmont, and the Townships of Conemaugh, East Taylor, Jackson, Lower Yoder, Middle Taylor, Stoneycreek, Upper Yoder and West Taylor, in the County of Cambria. (Total Population: 56,474)

(73) The Seventy-third Representative District shall consist of the Boroughs of Ashville, Barnesboro, Carrolltown, Cassandra, Chest Springs, Cresson, Galitzin, Hastings, Lilly, Loretto, Patton, Portage, Sankertown, Spangler and Tunnelhill, and the Townships of Allegheny, Barr, Blacklick, Chest, Clearfield, Cresson, Dean, East Carroll, Elder, Gallitzin, Munster, Portage, Reade, Susquehanna, Washington, West Carroll and White, in the County of Cambria. (Total Population: 54,130)

(74) The Seventy-fourth Representative District shall consist of the County of Clearfield, less the City of DuBois and the Townships of Sandy and Cooper. (Total Population: 62,744)

(75) The Seventy-fifth Representative District shall consist of the County of Elk, the County of Cameron, and the Boroughs of Renova and South Renova, and the Townships of Chapman, Leidy, East Keating, West Keating and Noyes, in the County of Clinton. (Total Population: 51,282)

(76) The Seventy-sixth Representative District shall consist of the City of Lock Haven, the Boroughs of Avis, Beech Creek, Flemington, Loganton, Mill Hall, and the Townships of Allison, Bald Eagle, Beech Creek, Castanea, Colebrook, Crawford, Dunnstable, Gallagher,

Greene, Grugan, Lamar, Logan, Pine Creek, Porter, Wayne and Woodward, in the County of Clinton, and the Boroughs of Milesburg, Unionville, Snow Shoe, Howard, Centre Hall and Millheim, and the Townships of Burnside, Curtin, Howard, Liberty, Boggs, Union, Snow Shoe, Marion, Walker, Miles, Haines, Penn, Gregg and Potter, in the County of Centre. (Total Population: 51,218)

(77) The Seventy-seventh Representative District shall consist of the Boroughs of Bellefonte, Philipsburg, Port Matilda, South Philipsburg and State College, and the Townships of Benner, College, Ferguson, Halfmoon, Harris, Huston, Patton, Rush, Spring, Taylor and Worth, in the County of Centre, and the Township of Cooper, in the County of Clearfield. (Total Population: 61,414)

(78) The Seventy-eighth Representative District shall consist of the County of Bedford and the County of Fulton. (Total Population: 53,048)

(79) The Seventy-ninth Representative District shall consist of the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and fourteenth wards in the City of Altoona, in the County of Blair. (Total Population: 62,532)

(80) The Eightieth Representative District shall consist of the thirteenth ward of the City of Altoona, the Boroughs of Bellwood, Ducansville, Newry, Hollidaysburg, Williamsburg, Roaring Spring and Martinsburg, and the Townships of Antis, Allegheny, Blair, Frankstown, Freedom, Greenfield, Juniata, Logan Huston, North Woodbury, Taylor and Woodbury, in the County of Blair. (Total Population: 61,586)

(81) The Eighty-first Representative District shall consist of the Borough of Tyrone, and the Townships of Catherine, Snyder and Tyrone, in the County of Blair, and the County of Huntingdon, less the Borough of Mount Union. (Total Population: 48,518)

326

(82) The Eighty-second Representative District shall consist of all of the County of Mifflin and the Borough of Mount Union in Huntingdon County. (Total Population: 48,439)

(83) The Eighty-third Representative District shall consist of the City of Williamsport and the Township of Loyalsock, in the County of Lycoming. (Total Population: 51,014)

(84) The Eighty-fourth Representative District shall consist of the County of Lycoming, less the City of Williamsport and the Township of Loyalsock. (Total Population: 58,353)

(85) The Eighty-fifth Representative District shall consist of the County of Union and the County of Snyder. (Total Population: 51,568)

(86) The Eighty-sixth Representative District shall consist of the County of Juniata, the County of Perry and the Boroughs of Newburg and Newville, and the Townships of Hopewell, Upper Mifflin, Lower Mifflin, Upper Frankford and North Newton, in the County of Cumberland. (Total Population: 48,358)

(87) The Eighty-seventh Representative District shall consist of the Boroughs of Lemoyne, Camp Hill, Wormleysburg, West Fairview and Mechanicsburg, and the Townships of East Pennsboro, Hampden, Silver Spring, Middlesex, North Middleton, Lower Frankford and West Pennsboro, in the County of Cumberland. (Total Population: 55,079)

(88) The Eighty-eighth Representative District shall consist of the Boroughs of Carlisle, Mt. Holly Springs, New Cumberland and Shiremanstown, and the Townships of Lower Allen, Upper Allen, Monroe, South Middleton, Dickinson, Penn and Cooke, in the County of Cumberland. (Total Population: 54,314)

(89) The Eighty-ninth Representative District shall consist of the Borough of Shippensburg (part of), the Townships of Shippensburg, Southampton and

South Newton, in the County of Cumberland, and the Boroughs of Chambersburg, Orrstown and Shippensburg (part of), and the Townships of Fannett, Letterkenny, Lurgan, Hamilton, Greene, Southampton and St. Thomas, in the County of Franklin. (Total Population: 48,587)

(90) The Ninetieth Representative District shall consist of the Boroughs of Greencastle, Mercersburg, Mont Alto and Waynesboro, and the Townships of Antrim, Guilford, Metal, Montgomery, Peters, Quincy, Warren and Washington, in the County of Franklin. (Total Population: 49,106)

(91) The Ninety-first Representative District shall consist of the County of Adams. (Total Population: 51,906)

(92) The Ninety-second Representative District shall consist of the Boroughs of Dillsburg, Dover, Franklintown, Goldsboro, Lewisberry, Manchester, Mt. Wolf, North York, Spring Grove, Wellsville and York Haven, and the Townships of Carroll, Conewago, Dover, E. Manchester, Fairview, Franklin, Jackson, Manchester, Monaghan, Newberry, Paradise, Warrington, Washington and West Manchester, in the County of York. (Total Population: 60,120)

(93) The Ninety-third Representative District shall consist of the Boroughs of Cross Roads, Dallastown, Glen Rock, Hanover, Jacobus, Jefferson, Loganville, New Freedom, New Salem, Railroad, Seven Valleys, Shrewsbury, Winterstown and Yoe, and the Townships of Codorus, Heidelberg, Manheim, North Codorus, North Hopewell, Penn, Shrewsbury, Springfield, West Manheim and York, in the County of York. (Total Population: 58,978)

(94) The Ninety-fourth Representative District shall consist of the Boroughs of Delta, Fawn Grove, East Prospect, Felton, Hallam, Red Lion, Stewartstown, Windsor, Wrightsville and Yorkana, and the

Townships of Chanceford, East Hopewell, Fawn, Hellam, Hopewell, Lower Chanceford, Lower Windsor, Peach Bottom, Springettsbury, Spring Garden and Windsor, in the County of York. (Total Population: 59,208)

(95) The Ninety-fifth Representative District shall consist of the City of York and the Borough of West York, in the County of York. (Total Population: 60,030)

(96) The Ninety-sixth Representative District shall consist of the City of Lancaster, in the County of Lancaster. (Total Population: 61,055)

(97) The Ninety-seventh Representative District shall consist of the Borough of East Petersburg and the Townships of East Hempfield, East Lampeter, Manheim, Upper Leacock, West Earl and Lancaster, in the County of Lancaster. (Total Population: 50,789)

(98) The Ninety-eighth Representative District shall consist of the Boroughs of Columbia, Elizabethtown, Manheim, Marietta, Mount Joy and Mountville, and the Townships of Conoy, East Donegal, Mount Joy, Penn, Rapho, West Donegal and West Hempfield, in the County of Lancaster. (Total Population: 57,-105)

(99) The Ninety-ninth Representative District shall consist of the Boroughs of Adamstown, Akron, Denver, Ephrata, New Holland and Terre Hill, and the Townships of Brecknock, Caernarvon, Clay, Earl, East Earl, East Cocalico, Ephrata, Salisbury and West Cocalico, in the County of Lancaster. (Total Population: 47,908)

(100) The One hundredth Representative District shall consist of the Boroughs of Christiana, Millersville, Quarryville, Strasburg and Washington, and the Townships of West Lampeter, Strasburg, Sadsbury, Providence, Bart, Colerain, Conestoga, Drumore, East Drumore, Eden, Fulton, Leacock, Little Britain, Man-

or, Martic, Paradise and Pequea, in the County of Lancaster. (Total Population: 49,244)

(101) The One hundred and first Representative District shall consist of the City of Lebanon, the Boroughs of Palmyra and Mt. Gretna, and the Townships of North Londonberry, Annville, South Annville, South Londonderry, West Cornwall, North Cornwall and West Lebanon, in the County of Lebanon. (Total Population: 51,908)

(102) The One hundred and second Representative District shall consist of the Borough of Lititz and the Townships of Warwick and Elizabeth in the County of Lancaster, and the Boroughs of Cleona, Cornwall, Jonestown, Myerstown and Richland, and the Townships of Swatara, Union, Bethel, Cold Spring, East Hanover, Heidelberg, Jackson, Millcreek, North Annville, North Lebanon and South Lebanon, in the County of Lebanon. (Total Population: 51,203)

(103) The One hundred and third Representative District shall consist of the first, second, third, fourth, fifth, sixth, seventh, tenth, eleventh, twelfth and fourteenth wards in the City of Harrisburg, in the County of Dauphin. (Total Population: 53,979)

(104) The One hundred and fourth Representative District shall consist of the eighth, ninth, thirteenth and fifteenth wards of the City of Harrisburg, the Boroughs of Paxtang and Penbrook, and the Township of Susquehanna, in the County of Dauphin. (Total Population: 48,779)

(105) The One hundred and fifth Representative District shall consist of the Boroughs of Lykens, Gratz, Berrysburg, Williamstown, Elizabethville, Millersburg, Halifax, Dauphin, Hummelstown and Uniontown, and the Townships of Lykens, Wiconisco, Williams, Washington, Mifflin, Upper Paxton, Halifax, Jackson, Wayne, Jefferson, Rush, Reed, Middle Paxton, Lower Paxton, West Hanover, East Hanover and South Han-

over, in the County of Dauphin. (Total Population: 54,825)

(106), The One hundred and sixth Representative District shall consist of the Boroughs of Highspire, Middletown, Royalton and Steelton, and the Townships of Conewago, Derry, Londonderry, Lower Swatara and Swatara, in the County of Dauphin. (Total Population: 62,672)

(107) The One hundred and seventh Representative District shall consist of the City of Shamokin, the Boroughs of Herndon, Marion Heights, Kulpmont, Mt. Carmel and Snydertown, and the Townships of Rush, Shamokin, Ralpho, Zerbe, Coal, Mt. Carmel, West Cameron, East Cameron, Jackson, Washington, Upper Mahanoy, Jordan and Lower Mahanoy, in the County of Northumberland. (Total Population: 60,357)

(108) The One hundred and eighth Representative District shall consist of the County of Montour, and the City of Sunbury, the Boroughs of McEwensville, Milton, Northumberland, Riverside, Turbotville and Watsontown, and the Townships of Delaware, East Chillisquaque, Lewis, Little Mahanoy, Lower Augusta, Point, Rockefeller, Turbot, Upper Augusta and West Chillisquaque, in the County of Northumberland. (Total Population: 60,511)

(109) The One hundred and ninth Representative District shall consist of the County of Columbia. (Total Population: 53,489)

(110) The One hundred and tenth Representative District shall consist of the County of Bradford. (Total Population: 54,925)

(111) The One hundred and eleventh Representative District shall consist of the Counties of Sullivan, Susquehanna and Wyoming. (Total Population: 56,201)

(112) The One hundred and twelfth Representative District shall consist of the sixth, eighth, ninth,

tenth, eleventh, twelfth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-second and twenty-fourth wards of the City of Scranton, in the County of Lackawanna. (Total Population: 55,074)

(113) The One hundred and thirteenth Representative District shall consist of the first, second, third, fourth, fifth, seventh, thirteenth, fourteenth, fifteenth, twenty-first and twenty-third wards of the City of Scranton, in the County of Lackawanna. (Total Population: 56,369)

(114) The One hundred and fourteenth Representative District shall consist of the City of Carbondale, the Boroughs of Clarks Green, Clarks Summit, Dalton, Jermyn, Mayfield, Moosic, Old Forge, Taylor and Vandling, and the Townships of Abington, Benton, Carbondale, Fell, Glenburn, Greenfield, LaPlume, Newton, North Abington, Ransom, Scott, South Abington and West Abington, in the County of Lackawanna. (Total Population: 61,301)

(115) The One hundred and fifteenth Representative District shall consist of the Boroughs of Archbald, Blakely, Dickson City, Dunmore, Moscow, Olyphant, Throop and Jessup, and the Townships of Clifton, Covington, Elmhurst, Jefferson, Lehigh, Madison, Roaring Brook and Spring Brook, in the County of Lackawanna. (Total Population: 61,787)

(116) The One hundred and sixteenth Representative District shall consist of the City of Hazleton, the Boroughs of Freeland, Jeddo, West Hazleton and White Haven, and the Townships of Black Creek, Foster and Hazle, in the County of Luzerne. (Total Population: 57,078)

(117) The One hundred and seventeenth Representative District shall consist of the Boroughs of Ashley, Conyngham, Nescopeck, Nuangola, Sugar Notch, Warrior Run, Plymouth, Shickshinny and New Columbus, and the Townships of Butler, Dennison, Dorrance,

Fairview, Hanover, Lake, Lehman, Hollenback, Nes-copeck, Rice, Ross, Salem, Sugarloaf, Wright, Union, Huntington and Fairmount, in the County of Luzerne. (Total Population: 58,437)

(118) The One hundred and eighteenth Representative District shall consist of the City of Pittston, the Boroughs of Avoca, Dupont, Duryea, Hughestown, Laflin, Laurel Run and Yatesville, and the Townships of Buck, Bear Creek, Jenkins, Pittston, Plains and Wilkes-Barre, in the County of Luzerne. (Total Population: 52,162)

(119) The One hundred and nineteenth Representative District shall consist of the City of Nanticoke, the Boroughs of Courtdale, Edwardsville, Larksville, Pringle, Luzerne, Swoyersville and West Wyoming, and the Townships of Conyngham, Hunlock, Plymouth, Slocum and Newport, in the County of Luzerne. (Total Population: 57,538)

(120) The One hundred and twentieth Representative District shall consist of the Boroughs of Exeter, Forty Fort, Kingston, West Pittston, Wyoming and Dallas, and the Townships of Exeter, Franklin, Jackson, Kingston and Dallas, in the County of Luzerne. (Total Population: 58,206)

(121) The One hundred and twenty-first Representative District shall consist of the City of Wilkes-Barre, in the County of Luzerne. (Total Population: 63,551).

(122) The One hundred and twenty-second Representative District shall consist of the County of Carbon. (Total Population: 52,889)

(123) The One hundred and twenty-third Representative District shall consist of the Boroughs of Gilberton, Mahanoy City, McAdoo, Middleport, Minersville, New Philadelphia, Ringtown, Shenandoah and St. Clair, and the Townships of Blythe, Delano, East Norwegian, East Union, Kline, Mahanoy, New Castle,

North Union, Norwegian, Ryan, Union and West Mahanoy, in the County of Schuylkill. (Total Population: 58,731)

(124) The One hundred and twenty-fourth Representative District shall consist of the City of Pottsville, the Boroughs of Coaldale, Cressona, Deer Lake, Mechanicsville, Mount Carbon, New Ringgold, Orwigsburg, Palo Alto, Port Carbon, Port Clinton and Tamaqua, and the Townships of East Brunswick, North Manheim, Rahn, Rush, Schuylkill, Walker, West Penn and West Brunswick, in the County of Schuylkill. (Total Population: 58,790)

(125) The One hundred and twenty-fifth Representative District shall consist of the Boroughs of Pine Grove, Tower City, Tremont, Ashland, Frackville, Girardville, Gordon, Auburn, Landingville and Schuylkill Haven, and the Townships of Barry, Branch, Cass, Eldred, Foster, Frailey, Hegins, Hubley, Pine Grove, Porter, Reilly, Tremont, Upper Mahantango, Washington, Wayne, Butler and South Manheim, in the County of Schuylkill. (Total Population: 55,506)

(126) The One hundred and twenty-sixth Representative District shall consist of the seventh, eleventh, twelfth, thirteenth, fourteenth, fifteenth, seventeenth and nineteenth wards of the City of Reading, in the County of Berks. (Total Population: 48,551)

(127) The One hundred and twenty-seventh Representative District shall consist of the first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, sixteenth and eighteenth wards of the City of Reading, in the County of Berks. (Total Population: 49,626)

(128) The One hundred and twenty-eighth Representative District shall consist of the Boroughs of Birdsboro, Mohnton, Mount Penn, Shillington, West Reading, Wyomissing, Kenhorst, St. Lawrence, and that part of Adamstown located in Berks County, and the Townships of Amity, Brecknock, Caernarvon, Cum-

ru, Exeter, Lower Alsace, Robeson and Union, in the County of Berks. (Total Population: 59,639)

(129) The One hundred and twenty-ninth Representative District shall consist of the Boroughs of Bernville, Centerport, Hamburg, Lenhartsville, Robesonia, Shoemakersville, Sinking Spring, Strausstown, Wernersville, West Lawn, Leesport, Womelsdorf and Wyomissing Hills, and the Townships of Albany, Bern, Bethel, Centre, Greenwich, Heidelberg, Jefferson, Lower Heidelberg, Marion, North Heidelberg, Ontelaunee, Penn, Perry, South Heidelberg, Spring, Tilden, Tulpehocken, Upper Bern, Upper Tulpehocken, and Windsor, in the County of Berks. (Total Population: 56,-817)

(130) The One hundred and thirtieth Representative District shall consist of the Boroughs of Bally, Bechtelsville, Boyertown, Fleetwood, Laureldale, Temple, Topton, Kutztown and Lyons, and the Townships of Alsace, Colebrookdale, District, Douglass, Earl, Hereford, Longswamp, Muhlenberg, Oley, Pike, Rockland, Ruscombmanor, Washington, Maidencreek, Maxatawny and Richmond, in the County of Berks. (Total Population: 60,781)

(131) The One hundred and thirty-first Representative District shall consist of the first, second, third, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, eighteenth and nineteenth wards in the City of Allentown, in the County of Lehigh. (Total Population: 53,407)

(132) The One hundred and thirty-second Representative District shall consist of the fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and seventeenth wards of the City of Allentown, in the County of Lehigh. (Total Population: 54,940)

(133) The One hundred and thirty-third Representative District shall consist of that part of the City of Bethlehem situate in Lehigh County, the Boroughs

of Catasauqua, Coplay and Fountain Hill, and the Townships of Hanover, South Whitehall and Whitehall, in the County of Lehigh. (Total Population: 60,-817)

(134) The One hundred and thirty-fourth Representative District shall consist of the Boroughs of Alburitis, Coopersburg, Emmaus, Macungie and Slatington, and the Townships of Heidelberg, Lower Macungie, Lower Milford, Lowhill, Lynn, North Whitehall, Salisbury, Upper Macungie, Upper Milford, Upper Saucon, Washington and Weisenberg, in the County of Lehigh. (Total Population: 58,372)

(135) The One hundred and thirty-fifth Representative District shall consist of that part of the City of Bethlehem located in Northampton County. (Total Population: 55,325)

(136) The One hundred and thirty-sixth Representative District shall consist of the City of Easton, the Boroughs of Wilson, West Easton, Glendon and Hellertown, and the Townships of Williams and Lower Saucon, in the County of Northampton. (Total Population: 57,278)

(137) The One hundred and thirty-seventh Representative District shall consist of the Boroughs of Bangor, East Bangor, Freemansburg, Nazareth, Portland, Roseto, Stockertown and Tatamy, and the Townships of Bethlehem, Forks, Hanover, Lower Mount Bethel, Lower Nazareth, Palmer, Upper Mount Bethel, Upper Nazareth and Washington, in the County of Northampton. (Total Population: 51,138)

(138) The One hundred and thirty-eighth Representative District shall consist of the Boroughs of Chapman, Pen Argyl, Wind Gap, Bath, Northampton, North Catasaqua, and Walnutport, and the Townships of Bushkill, Moore, Plainfield, Allen, East Allen and Lehigh, in the County of Northampton, and the Townships of Tunkhannock, Jackson, Chestnuthill, Eldred,

Hamilton, Polk, Ross and Stroud, in the County of Monroe. (Total Population: 50,990)

(139) The One hundred and thirty-ninth Representative District shall consist of the County of Wayne, the County of Pike, and the Boroughs of Mount Pocono, Delaware Water Gap, East Stroudsburg and Stroudsburg, and the Townships of Barrett, Coolbaugh, Middle Smithfield, Paradise, Pocono, Price, Tobyhanna and Smithfield, in the County of Monroe. (Total Population: 63,643)

(140) The One hundred and fortieth Representative District shall consist of the Boroughs of Bristol and Tullytown, the fifth and ninth wards of the Township of Bristol, and the Township of Falls, in the County of Bucks. (Total Population: 51,083)

(141) The One hundred and forty-first Representative District shall consist of the first, second, third, fourth, sixth, seventh, eighth and tenth wards of the Township of Bristol, in the County of Bucks. (Total Population: 52,113)

(142) The One hundred and forty-second Representative District shall consist of the Boroughs of Yardley, Langhorne, Langhorne Manor, Penndel, Hulmeville and Morrisville, and the Townships of Lower Makefield and Middletown, in the County of Bucks. (Total Population: 51,652)

(143) The One hundred and forty-third Representative District shall consist of the Boroughs of Newtown and Ivyland, and the Townships of Newtown, Wrightstown, Northampton, Lower Southampton, Bensalem and Upper Makefield, in the County of Bucks. (Total Population: 50,044)

(144) The One hundred and forty-fourth Representative District shall consist of the Boroughs of Doylestown, New Hope, Chalfont and New Britain, and the Townships of Solebury, Buckingham, New Britain, Doylestown, Warwick, Warminster, Warring-

ton and Upper Southampton, in the County of Bucks. (Total Population: 53,162)

(145) The One hundred and forty-fifth Representative District shall consist of the Boroughs of Dublin, Perkasie, Quakertown, Riegelsville, Richlandtown, Sellersville, Silverdale, Telford and Trumbauersville, and the Townships of Bedminster, Bridgeton, Durham, East Rockhill, Haycock, Hilltown, Milford, Nockamixon, Plumstead, Richland, Springfield, Tinicum and West Rockhill, in the County of Bucks. (Total Population: 50,513)

(146) The One hundred and forty-sixth Representative District shall consist of the Boroughs of East Greenville, Greenlane, Pennsburg, Pottstown and Red Hill, and the Townships of Douglass, Lower Pottsgrove, Marlborough, New Hanover, Upper Frederick, Upper Hanover, Upper Pottsgrove and West Pottsgrove, in the County of Montgomery. (Total Population: 52,379)

(147) The One hundred and forty-seventh Representative District shall consist of the Boroughs of Collegeville, Royersford, Schwenksville, Souderton, Telford and Trappe, and the Townships of Franconia, Limerick, Lower Frederick, Lower Providence, Lower Salford, Perkiomen, Salford, Skippack, Upper Providence and Upper Salford, in the County of Montgomery. (Total Population: 54,812)

(148) The One hundred and forty-eighth Representative District shall consist of the Boroughs of Bridgeport, Conshohocken and West Conshohocken, and the Townships of Plymouth, Upper Merion and Whitemarsh, in the County of Montgomery. (Total Population: 58,631)

(149) The One hundred and forty-ninth Representative District shall consist of the Borough of Narberth, and the Township of Lower Merion, in the County of Montgomery. (Total Population: 64,529)

(150) The One hundred and fiftieth Representative District shall consist of the Borough of Norristown, and the Townships of East Norriton and West Norriton, in the County of Montgomery. (Total Population: 55,040)

(151) The One hundred and fifty-first Representative District shall consist of the Boroughs of Ambler, Hatfield, Lansdale, and North Wales, and the Townships of Hatfield, Lower Gwynedd, Montgomery, Towamencin, Upper Gwynedd, Whitpain and Worcester, in the County of Montgomery. (Total Population: 56,-962)

(152) The One hundred and fifty-second Representative District shall consist of the Boroughs of Bryn Athyn and Hatboro, and the Townships of Horsham, Lower Moreland, Upper Dublin and Upper Moreland, in the County of Montgomery. (Total Population: 54,252)

(153) The One hundred and fifty-third Representative District shall consist of the Borough of Rockledge and the Township of Abington, in the County of Montgomery. (Total Population: 58,418)

(154) The One hundred and fifty-fourth Representative District shall consist of the Borough of Jenkintown, and the Townships of Cheltenham and Springfield, in the County of Montgomery. (Total Population: 61,659)

(155) The One hundred and fifty-fifth Representative District shall consist of the City of Coatesville, the Boroughs of Parkesburg, Atglen, Honey Brook and Elverson, and the Townships of Caln, Valley, Sadsbury, West Sadsbury, West Caln, West Brandywine, East Brandywine, Uwchlan, Upper Uwchlan, Wallace, Honeybrook, West Vincent, Warwick, South Coventry, North Coventry, East Coventry, East Nantmeal and West Nantmeal, in the County of Chester. (Total Population: 53,213)

(156) The One hundred and fifty-sixth Representative District shall consist of the Boroughs of Downingtown, West Chester and Malvern, and the Townships of East Caln, West Goshen, East Goshen, Willistown, Easttown and West Whiteland, in the County of Chester. (Total Population: 52,048)

(157) The One hundred and fifty-seventh Representative District shall consist of the Boroughs of Phoenixville and Spring City, and the Townships of East Whiteland, Tredyffrin, Charlestown, Schuylkill, West Pikeland, East Pikeland and East Vincent, in the County of Chester. (Total Population: 52,485)

(158) The One hundred and fifty-eighth Representative District shall consist of the Boroughs of Avondale, Kennett Square, Modena, Oxford, South Coatesville and West Grove, and the Townships of New Garden, Newlin, New London, Penn, Birmingham, East Bradford, East Fallowfield, East Marlborough, East Nottingham, Elk, Franklin, Highland, Kennett, London Britain, Londonderry, London Grove, Lower Oxford, Pennsbury, Pocopson, Thornbury, Upper Oxford, West Bradford, West Fallowfield, West Marlborough, West Nottingham and Westtown, in the County of Chester. (Total Population: 52,862)

(159) The One hundred and fifty-ninth Representative District shall consist of the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth and tenth wards of the City of Chester, in the County of Delaware. (Total Population: 51,809)

(160) The One hundred and sixtieth Representative District shall consist of the eleventh ward of the City of Chester, the Boroughs of Marcus Hook, Trainer and Upland, and the Townships of Aston, Chester, Lower Chichester and Upper Chichester, in the County of Delaware. (Total Population: 50,188)

(161) The One hundred and sixty-first Representative District shall consist of the Boroughs of Eddy-

stone, Morton, Prospect Park, Ridley Park, Rutledge and Swarthmore, and the Townships of Ridley and that part of Springfield bounded and surrounded by the Borough of Swarthmore and the Townships of Nether Providence and Ridley, in the County of Delaware. (Total Population: 61,797)

(162) The One hundred and sixty-second Representative District shall consist of the Boroughs of Collingdale, Folcroft, Glenolden, Norwood, Sharon Hill, and the Townships of Darby and Tinicum, in the County of Delaware. (Total Population: 55,355)

(163) The One hundred and sixty-third Representative District shall consist of the Boroughs of Aldan, Clifton Heights, Colwyn, Darby, Lansdowne and Yeadon, and the sixth district of the second ward of the Township of Upper Darby, in the County of Delaware. (Total Population: 55,284)

(164) The One hundred and sixty-fourth Representative District shall consist of the Boroughs of Millbourne and East Lansdowne, and the first, second (less sixth district), third, fourth, fifth, sixth, seventh, eighth and tenth wards of the Township of Upper Darby, in the County of Delaware. (Total Population: 61,-649)

(165) The One hundred and sixty-fifth Representative District shall consist of the ninth, eleventh, twelfth and thirteenth wards of the Township of Upper Darby, and the Township of Springfield (excepting that segment bounded and surrounded by the Borough of Swarthmore and the Townships of Nether Providence and Ridley), in the County of Delaware. (Total Population: 60,485)

(166) The One hundred and sixty-sixth Representative District shall consist of the Township of Haverford, in the County of Delaware. (Total Population: 54,019)

(167) The One hundred and sixty-seventh Representative District shall consist of the Borough of Media,

and the Townships of Marple, Radnor and Upper Providence, in the County of Delaware. (Total Population: 53,281)

(168) The One hundred and sixty-eighth Representative District shall consist of the Boroughs of Brookhaven, Chester Heights, Parkside and Rose Valley, and the Townships of Bethel, Birmingham, Concord, Edgemont, Middletown, Nether Providence, Newtown and Thornbury, in the County of Delaware. (Total Population: 49,287)

(169) The One hundred and sixty-ninth Representative District shall consist of the fifty-seventh, fifty-eighth and sixty-sixth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 53,921)

(170) The One hundred and seventieth Representative District shall consist of the thirty-fifth and sixty-third wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 51,425)

(171) The One hundred and seventy-first Representative District shall consist of the fifty-third and fifty-sixth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 54,454)

(172) The One hundred and seventy-second Representative District shall consist of the fifty-fifth and sixty-fourth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 53,173)

(173) The One hundred and seventy-third Representative District shall consist of the forty-first and sixty-fifth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 49,654)

(174) The One hundred and seventy-fourth Representative District shall consist of the fifty-fourth and sixty-second wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 57,656)

(175) The One hundred and seventy-fifth Representative District shall consist of the twenty-third and

forty-fifth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 63,472)

(176) The One hundred and seventy-sixth Representative District shall consist of the forty-second and forty-ninth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 63,506)

(177) The One hundred and seventy-seventh Representative District shall consist of the twenty-fifth and thirty-third wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 59,329)

(178) The One hundred and seventy-eighth Representative District shall consist of the seventh and thirty-first wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 55,296)

(179) The One hundred and seventy-ninth Representative District shall consist of the thirty-seventh and forty-third wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 56,387)

(180) The One hundred and eightieth Representative District shall consist of the eighteenth and nineteenth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 58,127)

(181) The One hundred and eighty-first Representative District shall consist of the twentieth and forty-seventh wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 54,936)

(182) The One hundred and eighty-second Representative District shall consist of the fifth and fourteenth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 55,107)

(183) The One hundred and eighty-third Representative District shall consist of the first and second wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 61,237)

(184) The One hundred and eighty-fourth Representative District shall consist of the thirty-ninth ward of the City of Philadelphia, in the County of Philadelphia. (Total Population: 63,360)

(185) The One hundred and eighty-fifth Representative District shall consist of the twenty-sixth and forty-eighth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 57,124)

(186) The One hundred and eighty-sixth Representative District shall consist of the thirty-sixth ward of the City of Philadelphia, in the County of Philadelphia. (Total Population: 55,519)

(187) The One hundred and eighty-seventh Representative District shall consist of the eighth and thirtieth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 51,928)

(188) The One hundred and eighty-eighth Representative District shall consist of the fortieth ward of the City of Philadelphia, in the County of Philadelphia. (Total Population: 58,039)

(189) The One hundred and eighty-ninth Representative District shall consist of the forty-sixth and fifty-first wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 60,589)

(190) The One hundred and ninetieth Representative District shall consist of the sixth and twenty-seventh wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 60,467)

(191) The One hundred and ninety-first Representative District shall consist of the third and sixtieth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 56,158)

(192) The One hundred and ninety-second Representative District shall consist of the thirty-fourth ward of the City of Philadelphia, in the County of Philadelphia. (Total Population: 50,896)

(193.) The One hundred and ninety-third Representative District shall consist of the fourth and forty-fourth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 57,724)

(194) The One hundred and ninety-fourth Representative District shall consist of the twenty-fourth

344

and the fifty-second wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 58,-288)

(195) The One hundred and ninety-fifth Representative District shall consist of the fifteenth and twenty-ninth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 54,816)

(196) The One hundred and ninety-sixth Representative District shall consist of the thirty-second ward of the City of Philadelphia, in the County of Philadelphia. (Total Population: 52,795)

(197) The One hundred and ninety-seventh Representative District shall consist of the sixteenth and twenty-eighth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 56,584)

(198) The One hundred and ninety-eighth Representative District shall consist of the eleventh and thirty-eighth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 56,734)

(199) The One hundred and ninety-ninth Represeentative District shall consist of the ninth and twenty-first wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 60,079)

(200) The Two hundredth Representative District shall consist of the twenty-second and fiftieth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 64,660)

(201) The Two hundred and first Representative District shall consist of the twelfth and fifty-ninth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 60,661)

(202) The Two hundred and second Representative District shall consist of the thirteenth and seventeenth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 58,856)

(203) The Two hundred and third Representative District shall consist of the tenth and sixty-first

wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 59,555)

APPENDIX B·

SENATE*

The Senate shall be districted as follows:

(1) The First Senatorial District shall consist of the first, second, fifth, fourteenth, eighteenth, twentieth and thirty-ninth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 238,-235)

(2) The Second Senatorial District shall consist of the eighth, fifteenth, twenty-fourth, twenty-ninth, thirtieth, thirty-sixth and forty-eighth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 220,271)

(3) The Third Senatorial District shall consist of the eleventh, sixteenth, nineteenth, thirty-second, thirty-seventh, forty-third and forty-seventh wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 221,521)

(4) The Fourth Senatorial District shall consist cf the twenty-third, twenty-fifth, thirty-first, thirty-third, forty-fifth, fifty-fourth, fifty-fifth and sixty-second wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 240,838)

(5) The Fifth Senatorial District shall consist of the seventh, twelfth, thirteenth, seventeenth, forty-second, forty-ninth and sixty-first wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 213,437)

| | |
|---|---|
| * Total Number of Districts | 50 |
| Ratio per District | 226,387 |
| Total Population of Commonwealth | 11,319,366 |

(6) The Sixth Senatorial District shall consist of the thirty-fifth, forty-first, fifty-third, fifty-sixth, fifty-seventh, fifty-eighth, sixty-third, sixty-fourth, sixty-fifth and sixty-sixth wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 228,498)

(7) The Seventh Senatorial District shall consist of the fourth, sixth, twenty-eighth, thirty-fourth, forty-fourth, fifty-second and sixtieth wards, and that portion of the thirty-eighth ward which is bounded on the north by Hunting Park Avenue, on the east by Ridge Avenue and Thirty-third Street, and on the west and south by the Schuylkill River, of the City of Philadelphia, in the County of Philadelphia. (Total Population: 222,035)

(8) The Eighth Senatorial District shall consist of the third, twenty-sixth, twenty-seventh, fortieth, forty-sixth and fifty-first wards of the City of Philadelphia, in the County of Philadelphia. (Total Population: 207,225)*

(9) The Ninth Senatorial District shall consist of the City of Chester, the Boroughs of Chester Heights, Marcus Hook, Trainer, Upland, Eddystone, Ridley Park, Prospect Park, Norwood, Rutledge, Morton, Glenolden, Folcroft, Sharon Hill, Colwyn and Darby, and the Townships of Darby, Tinicum, Ridley, Chester, Lower Chichester, Upper Chichester, Aston, Bethel, Concord, Birmingham and Thornbury, in the County of Delaware. (Total Population: 228,743)

(10) The Tenth Senatorial District shall consist of the Townships of Bristol, Bedminster, Bridgeton, Buckingham, Doylestown, Durham, East Rockhill,

---

* An additional senatorial district for the City and County of Philadelphia was created by the Legislature of 1964 and designated as the Thirty-Sixth Senatorial District. That additional legislative district and numerical designation is here retained and appears in numerical sequence.

Falls, Haycock, Hilltown, Lower Makefield, Milford, New Britain, Newtown, Nockamixon, Northampton, Plumstead, Richland, Solebury, Springfield, Tinicum, Upper Makefield, Warrington, Warwick, West Rockhill, Wrightstown and Warminster, and the Boroughs of Ivyland, Bristol, Chalfont, Doylestown, Dublin, Morrisville, New Britain, New Hope, Newtown, Perkasie, Quakertown, Richlandtown, Riegelsville, Sellersville, Silverdale, Telford, Trumbauersville, Tullytown and Yardley, in the County of Bucks. (Total Population: 231,542)

(11) The Eleventh Senatorial District shall consist of the City of Reading, the Boroughs of Adamstown, Bally, Bechtelsville, Boyertown, Birdsboro, West Reading, Kenhorst, Mohnton, Shillington, Mt. Penn, St. Lawrence, Temple, Laureldale, Topton, Lyons, Kutztown, Fleetwood, and the Townships of Maxatawny, Richmond, Maidencreek, Muhlenberg, Alsace, Lower Alsace, Exeter, Robeson, Cumru, Brecknock, Caernarvon, Union, Amity, Douglass, Colebrookdale, Earl, Oley, Ruscombmanor, Rockland, Pike, Longswamp, District, Washington and Hereford, in the County of Berks. (Total Population: 213,553)

(12) The Twelfth Senatorial District shall consist of the Townships of Cheltenham, Abington, Horsham, Lower Moreland, Upper Moreland, and the Boroughs of Bryn Athyn, Hatboro, Rockledge, and Jenkintown, in the County of Montgomery; and the Townships of Bensalem, Middletown, Lower Southampton and Upper Southampton, and the Boroughs of Hulmeville, Langhorne, Langhorne Manor and Penndel, in the County of Bucks. (Total Population: 220,518)

(13) The Thirteenth Senatorial District shall consist of the City of Lancaster, the Townships of Manheim, Bart, Colerain, Conestoga, Conoy, Drumore, East Donegal, East Drumore, East Hempfield, East Lampeter, Eden, Fulton, Lancaster, Leacock, Little Britain,

Manor, Martin, Mount Joy, Paradise, Pequea, Providence, Rapho, Sadsbury, Salisbury, Strasburg, Upper Leacock, West Donegal, West Hempfield and West Lampeter, and the Boroughs of Christiana, Columbia, East Petersburg, Elizabethtown, Manheim, Marietta, Millersville, Mount Joy, Mountville, Quarryville, Strasburg and Washington, in the County of Lancaster. (Total Population: 216,134)

(14) The Fourteenth Senatorial District shall consist of the Cities of Hazleton, Nanticoke, Pittston and Wilkes-Barre, the Townships of Bear Creek, Black Creek, Buck, Butler, Conyngham, Dennison, Dorrance, Fairview, Foster, Hanover, Hazle, Hollenback, Jenkins, Nescopeck, Newport, Pittston, Plains, Rice, Slocum, Sugarloaf, Wilkes-Barre and Wright, and the Boroughs of Ashley, Avoca, Conyngham, Dupont, Duryea, Freeland, Hughestown, Jeddo, Jenkins, Laflin, Laurel Run, Nescopeck, Nuangola, Sugar Notch, Warrior Run, West Hazleton, White Haven, and Yatesville, in the County of Luzerne. (Total Population: 232,500)

(15) The Fifteenth Senatorial District shall consist of all of Dauphin County. (Total Population: 220,-255)

(16) The Sixteenth Senatorial District shall consist of all of Lehigh County. (Total Population: 227,-536)

(17) The Seventeenth Senatorial District shall consist of the Townships of Haverford and Radnor in the County of Delaware, and the Townships of Lower Merion, Upper Merion, Plymouth, Whitemarsh and Springfield, and the Boroughs of Bridgeport, Conshohocken, West Conshohocken and Narberth, in the County of Montgomery. (Total Population: 219,528)

(18) The Eighteenth Senatorial District shall consist of the Boroughs of East Stroudsburg and Stroudsburg, and the Townships of Eldred, Hamilton, Ross and Stroud, in the County of Monroe, and all of Northampton County. (Total Population: 224,741)

(19) The Nineteenth Senatorial District shall consist of all of Chester County. (Total Population: 210,-608)

(20) The Twentieth Senatorial District shall consist of all of Monroe County, less the Boroughs of East Stroudsburg and Stroudsburg, and the Townships of Eldred, Hamilton, Ross and Stroud, all of Pike County, all of Wayne County, all of Susquehanna County, all of Wyoming County, and the Boroughs of West Pittston, Exeter, Wyoming, West Wyoming, Forty Fort, Swoyersville, Luzerne, Kingston, Pringle, Courtdale, Edwardsville, Larksville, Plymouth, Dallas, Shickshinny and New Columbus, and the Townships of Salem, Huntingdon, Union, Hunlock, Plymouth, Jackson, Kingston, Exeter, Franklin, Dallas, Lehman, Lake, Ross and Fairmount, in the County of Luzerne. (Total Population: 218,055)

(21) The Twenty-first Senatorial District shall consist of all of Butler County and all of Lawrence County. (Total Population: 227,604)

(22) The Twenty-second Senatorial District shall consist of all of Lackawanna County. (Total Population: 234,531)

(23) The Twenty-third Senatorial District shall consist of all of Potter County, all of Bradford County, all of Lycoming County, all of Sullivan County and all of Tioga County. (Total Population: 223,640)

(24) The Twenty-fourth Senatorial District shall consist of the Townships of Hatfield, Lower Pottsgrove, Upper Dublin, West Norriton, West Pottsgrove, Upper Gwynedd, Upper Pottsgrove, Douglass, East Norriton, Franconia, Limerick, Lower Frederick, Lower Gwynedd, Lower Providence, Lower Salford, Marlborough, Montgomery, New Hanover, Perkiomen, Salford, Skippack, Towamencin, Upper Frederick, Upper Hanover, Upper Providence, Upper Salford, Whitpain and Worcester, and the Boroughs of Ambler, College-

ville, East Greenville, Greenlane, Hatfield, Lansdale, Norristown, North Wales, Pennsburg, Pottstown, Red Hill, Royersford, Schwenksville, Souderton, Telford and Trappe, in the County of Montgomery. (Total Population: 229,377)

(25) The Twenty-fifth Senatorial District shall consist of all of Venango County, all of Warren County, all of Forest County, all of McKean County and all of Elk County. (Total Population: 207,207).

(26) The Twenty-sixth Senatorial District shall consist of the Boroughs of Yeadon, Aldan, Clifton Heights, Lansdowne, East Lansdowne, Swarthmore, Millbourne, Collingdale, Rose Valley, Parkside, Brookhaven and Media, and the Townships of Upper Darby, Springfield, Marple, Nether Providence, Newtown, Upper Providence, Edgmont and Middletown, in the County of Delaware. (Total Population: 248,695)

(27) The Twenty-seventh Senatorial District shall consist of all of Snyder County, all of Union County, all of Montour County, all of Columbia County and all of Northumberland County. (Total Population: 225,-925)

(28) The Twenty-eighth Senatorial District shall consist of all of York County, less the Boroughs of Dillsburg and Franklintown, and the Townships of Carroll, Fairview, Franklin and Monaghan, in the County of York. (Total Population: 226,517)

(29) The Twenty-ninth Senatorial District shall consist of all of Carbon County and all of Schuylkill County. (Total Population: 225,916)

(30) The Thirtieth Senatorial District shall consist of all of Bedford County, all of Somerset County, and the City of Altoona, the Boroughs of Duncansville, Hollidaysburg and Newry, and the Townships of Greenfield, Freedom, Juniata, Allegheny, Blair and Logan, in the County of Blair. (Total Population: 221,839)

(31)   The Thirty-first Senatorial District shall consist of all of Adams County, all of Cumberland County, all of Perry County, all of Juniata County, and the Boroughs of Dillsburg and Franklintown, and the Townships of Carroll, Fairview, Franklin and Monaghan, in the County of York. (Total Population: 230,-997)

(32)   The Thirty-second Senatorial District shall consist of all of Fayette County, the City of Monessen, and the Boroughs of Donegal, Mount Pleasant, Scottdale, Smithton, North Belle Vernon and West Newton, and the Townships of Cook, Donegal, Mount Pleasant, East Huntingdon, South Huntingdon and Rostraver, in the County of Westmoreland. (Total Population: 243,855)

(33)   The Thirty-third Senatorial District shall consist of all of Franklin County, all of Fulton County, all of Huntingdon County, all of Mifflin County and the Boroughs of Martinsburg, Roaring Spring, Williamsburg, Tyrone and Bellwood, and the Townships of Antis, Snyder, Tyrone, Frankstown, Taylor, North Woodbury, Huston, Woodbury and Catharine, in the County of Blair. (Total Population: 217,906)

(34)   The Thirty-fourth Senatorial District shall consist of all of Cameron County, all of Centre County, all of Clearfield County and all of Clinton County. (Total Population: 205,319)

(35)   The Thirty-fifth Senatorial District shall consist of all of Cambria County, and the Boroughs of Derry, Seward, New Florence, Bolivar and Ligonier, and the Townships of Derry, St. Clair, Fairfield and Ligonier, in the County of Westmoreland. (Total Population: 235,555)

(36)   The Thirty-sixth Senatorial District shall consist of the ninth, tenth, twenty-first, twenty-second, fiftieth and fifty-ninth wards, and that portion of the thirty-eighth ward not included in the Seventh Sena-

torial District, of the City of Philadelphia, in the County of Philadelphia. (Total Population: 210,452)

(37) The Thirty-seventh Senatorial District shall consist of the Boroughs of Bethel Park, Brentwood, Bridgeville, Carnegie, Castle Shannon, Crafton, Dormont, Green Tree, Heidelberg, Ingram, Jefferson, McDonald, Oakdale, Pleasant Hills, Rosslyn Farms, Thornburg and Whitehall, and the Townships of Baldwin, Collier, Findlay, Mt. Lebanon, North Fayette, Scott, Snowden, South Fayette and Upper St. Clair, in the County of Allegheny. (Total Population: 237,-829)

(38) The Thirty-eighth Senatorial District shall consist of the first, second, third, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, twenty-third, twenty-fourth and twenty-sixth wards of the City of Pittsburgh, the Borough of Millvale and the Township of Reserve, in the County of Allegheny. (Total Population: 233,003)

(39) The Thirty-ninth Senatorial District shall consist of the Cities of Greensburg, Arnold, Jeannette, New Kensington, and Lower Burrell, the Boroughs of Adamsburg, Arona, Avonmore, East Vandergrift, Export, Hunker, Hyde Park, Irwin, Suterville, Latrobe, Madison, Manor, New Alexandria, New Salem, North Irwin, Oklahoma, Penn, South Greensburg, Southwest Greensburg, Trafford, Vandergrift, West Leechburg, Youngstown and Youngwood, and the Townships of North Huntingdon, Penn, Allegheny, Bell, Franklin, Hempfield, Loyalhanna, Salem, Unity, Upper Burrell, Washington and Sewickley, in the County of Westmoreland. (Total Population: 245,842)

(40) The Fortieth Senatorial District shall consist of the Boroughs of Aspinwall, Avalon, Bell Acres, Bellevue, Ben Avon, Ben Avon Heights, Blawnox, Brackenridge, Bradford Woods, Cheswick, Edgeworth, Emsworth, Etna, Fox Chapel, Franklin Park, Glen-

field, Haysville, Leetsdale, Osborne, Sewickley, Sewickley Heights, Sewickley Hills, Sharpsburg, Springdale, Tarentum and West View, and the Townships of Aleppo, East Deer, Fawn, Frazer, Hampton, Harmer, Harrison, Indiana, Kilbuck, Leet, Marshall, McCandless, O'Hara, Ohio, Pine, Richland, Ross, Shaler, Springdale and West Deer, in the County of Allegheny. (Total Population: 241,633)

(41) The Forty-first Senatorial District shall consist of all of Armstrong County, all of Clarion County, all of Indiana County, all of Jefferson County. (Total Population: 239,090)

(42) The Forty-second Senatorial District shall consist of the eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-fifth, twenty-seventh, twenty-eighth and thirty-second wards of the City of Pittsburgh, the Boroughs of Coraopolis and McKees Rocks, and the Townships of Crescent, Kennedy, Moon, Neville, Robinson and Stowe, in the County of Allegheny. (Total Population: 243,774)

(43) The Forty-third Senatorial District shall consist of the fourth, fifth, fourteenth, fifteenth, sixteenth, seventeenth, twenty-ninth, thirtieth and thirty-first wards of the City of Pittsburgh, and the Boroughs of Baldwin and Mt. Oliver, in the County of Allegheny. (Total Population: 232,822)

(44) The Forty-fourth Senatorial District shall consist of the Boroughs of Braddock Hills, Chalfant, Churchill, East McKeesport, Edgewood, Forest Hills, Monroeville, Oakmont, Pitcairn, Plum, Swissvale, Trafford, Turtle Creek, Verona, Wall, White Oak, Wilkinsburg and Wilmerding, and the Townships of North Versailles, Penn Hills and Wilkins, in the County of Allegheny. (Total Population: 218,410)

(45) The Forty-fifth Senatorial District shall consist of the Cities of Clairton, Duquesne and McKeesport, the Boroughs of Braddock, Dravosburg, East

Pittsburgh, Elizabeth, Glassport, Homestead, Liberty, Lincoln, Munhall, North Braddock, Port Vue, Rankin, Versailles, West Elizabeth, West Homestead, West Mifflin and Whitaker, and the Townships of Elizabeth, Forward and South Versailles, in the County of Allegheny. (Total Population: 221,116)

. . (46). The Forty-sixth Senatorial District shall consist of all of Greene County, the Cities of Monongahela and Washington, and the Boroughs of Allenport, Beallsville, Bentleyville, California, Canonsburg, Centerville, Charleroi, Claysville, Coal Center, Cokeburg, Deemston, Donora, Dunlevy, East Washington, Elco, Ellsworth, Finlayville, Houston, Long Branch, Marianna, New Eagle, North Charleroi, Roscoe, Speers, Stockdale, Twilight, West Alexander, West Brownsville and West Middletown, and the Townships of East Bethlehem, Answell, Blaine, Buffalo, Canton, Carroll, Cecil, Chartiers, Donegal, East Finley, Fallowfield, Hopewell, Independence, Morris, North Bethlehem, North Franklin, North Strabane, Nottingham, Peters, Somerset, South Franklin, South Strabane, Union, West Bethlehem, West Finley, and West Pike Run, in the County of Washington. (Total Population: 233,886)

(47) The Forty-seventh Senatorial District shall consist of all of Beaver County, and the Boroughs of Burgettstown, McDonald and Midway, and the Townships of Cross Creek, Hanover, Jefferson, Mt. Pleasant, Robinson and Smith, in the County of Washington. (Total Population: 229,757)

(48) The Forty-eighth Senatorial District shall consist of all of Lebanon County, and the Boroughs of Lenhartsville, Hamburg, Shoemakersville, Leesport, Centerport, Strausstown, Bernville, Wyomissing Hills, Wyomissing, West Lawn, Sinking Spring, Wernersville, Robesonia and Womelsdorf, and the Townships of Bethel, Tulpehocken, Upper Tulpehocken, Marion,

Upper Bern, Tilden, Centre, Penn, Jefferson, Heidelberg, North Heidelberg, Lower Heidelberg, South Heidelberg, Spring, Bern, Ontelaunee, Perry, Windsor, Albany and Greenwich, in the County of Berks, and the Boroughs of Lititz, Akron, New Holland, Terra Hill, Ephrata, Denver and Adamstown, and the Townships of Elizabeth, Warwick, Clay, Ephrata, West Earl, Earl, East Earl, Caernarvon, Brecknock, Penn, East Cocalico and West Cocalico, in the County of Lancaster. (Total Population: 214,929)

(49) The Forty-ninth Senatorial District shall consist of all of Erie County less the City of Corry, the Boroughs of Elgin and Union City, and the Townships of Concord and Union. (Total Population: 236,345)

(50) The Fiftieth Senatorial District shall consist of all of Crawford County, all of Mercer County and the City of Corry, the Boroughs of Elgin and Union City, and the Townships of Concord and Union, in the County of Erie. (Total Population: 219,812)

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

The necessity for reapportioning and redistricting the Legislative and Senatorial Districts of Pennsylvania and also the House of Representatives in Congress was mandated by the Supreme Court of the United States in a series of cases commencing with *Baker v. Carr*, 369 U.S. 186; *Reynolds v. Sims*, 377 U.S. 533, 621; *Lucas v. Colorado Gen. Assembly*, 377 U.S. 713; *WMCA, Inc. v. Lomenzo*, 377 U.S. 633; *Maryland Committee v. Tawes*, 377 U.S. 656; *Davis v. Mann*, 377 U.S. 678; *Roman v. Sincock*, 377 U.S. 695; also *Wesberry v. Sanders*, 376 U.S. 1; *Gray v. Sanders*, 372 U.S. 368, re. congressional districts.

These decisions, in effect, declared Unconstitutional not merely the insupportable Constitution of Georgia and a number of obviously gerrymandered districts in some States, but also (1) the Constitution of Pennsyl-

vania (see *Butcher v. Bloom,* 415 Pa. 438, 203 A. 2d 556) and of nearly every State in our Country, as well as (2) the composition of the House of Representatives in Congress.

### What is the New Law and What are the New Standards?

The aforesaid decisions of the Supreme Court held: ". . . that the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, *as nearly of equal population as is practicable.**  We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement.

"In Wesberry v. Sanders, supra, [376 U.S. 1, 7-8] the Court stated that congressional representation must be based *on population as nearly as is practicable. . . .*

"A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and *provide for compact districts of contiguous territory* in designing a legislative apportionment scheme. Valid considerations may underlie such aims. . . .

". . . Whatever the means of accomplishment, the *overriding* objective must be *substantial equality of population* among the various districts, . . .

". . . So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the

---

* Italics throughout, ours.

apportionment of seats in either or both of the two houses of a bicameral state legislature." *Reynolds v. Sims*, 377 U.S. 533 (pages 577, 578, 579).

Furthermore, there must be no invidious discrimination. Cf. *Reynolds v. Sims*, 377 U.S., supra, pp. 566, 578; cf. also, *Douglas v. California*, 372 U.S. 353, 355; *Baker v. Carr* (Concurring Opinion by DOUGLAS, J.), 369 U.S. 186, 244; *Griffin v. Illinois*, 351 U.S. 12, 17; *Skinner v. Oklahoma*, 316 U.S. 535, 541.

In other words, the Supreme Court held that each House of a State Legislature (a) must have substantial equality of population among the various districts, or districts of as nearly equal population as is practicable and (b) that a State "may provide for *compact* districts of *contiguous* territory" and (c) that there must be no invidious discrimination. These are the only standards *specifically* promulgated by the Supreme Court. Furthermore, the Court itself stated in *Reynolds v. Sims* (page 578) that these four standards were "only a few rather general considerations which appear to us to be relevant." I am convinced (a) that these four standards are entirely insufficient guideposts for a fair, just and clearly defined Constitutional plan of districting, and (b) that *as nearly equal in population as is practicable* should be more definitely and precisely defined, and (c) that additional clear and necessary guideposts must be erected. See *Baker v. Carr*, 369 U.S., supra, Dissenting Opinion of Mr. Justice FRANKFURTER (page 267); *Reynolds v. Sims*, 377 U.S., supra, Dissenting Opinion of Mr. Justice HARLAN (page 621). Moreover, the aforesaid four standards erected by the Supreme Court *did not expressly* preclude or prohibit a consideration of many other very important factors and the criteria some of which will be hereinafter discussed.

This Court, carrying out and implementing the aforesaid decisions, relevantly said in *Butcher v. Bloom,*

415 Pa., supra (page 463) : "We hold, therefore, that Article II, §16 of the Pennsylvania Constitution requires that *senatorial reapportionment legislation* must *maintain the integrity of counties and other political subdivisions, insofar as possible,* and must provide for compact districts of contiguous territory, subject always to the overriding objective and mandate that such districts shall be 'as nearly equal in population as may be.' We must emphasize that, if necessary, any political subdivision or subdivisions may be divided or combined in the formation of districts where the population principle cannot otherwise be satisfied. . ."

The aforesaid new and novel interpretation of the Constitution of the United States by a majority of the Supreme Court is an abrupt and massive break with the past decisions of that Court, and, I am convinced, is contrary to the history and traditions of our Country and of nearly every State, and with due respect, finds no support in the language of the Constitution. The Court in effect *completely changes* the long and well established elective system of nearly all of our State Governments and of the House of Representatives, as well as the *basic structure, doctrine and philosophy of our Republican\* form of Government.*

Furthermore, it can be fairly said that no decision of the Supreme Court of the United States in the last hundred years has ever disturbed, dismayed and confused Congressmen, Legislators, Governors, Judges, lawyers and ordinary citizens as has the novel and

---

\* Popularly miscalled "Democratic" or "Democracy." The United States has a Constitutionally guaranteed Republican Form of Government (Art. IV, §4) with a democratic way of life. I also agree with the dissenting Justice who said that the *realistic effect* of the Court's decisions was to raise the practical question of whether there is or ever was any reason, use or necessity for a bicameral Legislature, which every State (except Nebraska) has and has had since their Statehood.

revolutionary decision in the *Reynolds* group of cases. It seems to have been forgotten that the form and scheme of Government of the United States which at various times has been the admiration of the civilized world, was created and based upon the foundation rock of three separate, independent, yet intertwined, coordinate co-equal branches of Government, *with its inherent fundamental concept and philosophy of checks and balances.*

My views are not groundless and my fears are not imaginary. They are supported by public expressions in Congress, in State Legislatures, in the press, magazines and news media throughout our Country, and most importantly by a number of Justices of the Supreme Court of the United States.

A few examples will suffice:

In *Wesberry v. Sanders,* 376 U.S., supra, Mr. Justice HARLAN, dissenting, said (pp. 20, 21, 42): "I had not expected to witness the day when the Supreme Court of the United States would render a decision which casts grave doubt on the constitutionality of the composition of the House of Representatives. It is not an exaggeration to say that such is the effect of today's decision. The Court's holding that the Constitution requires States to select Representatives either by elections at large or by elections in districts composed 'as nearly as is practicable' of equal population places in jeopardy the seats of almost all the members of the present House of Representatives.

". . . Thus, today's decision impugns the validity of the election of 398 Representatives from 37 States, leaving a 'constitutional' House of 37 members now sitting.

". . . The constitutional right which the Court creates is manufactured out of whole cloth."

In his dissenting Opinion in *Lucas v. Colorado Gen. Assembly,* 377 U.S., supra, Mr. Justice STEWART (with whom Mr. Justice CLARK joined) termed the Court's

decision "woefully wrong" and said (pp: 745-748, 750-751) : ". . . It has been unanswerably demonstrated before now that this 'was not the colonial system, *it. was not the system chosen for the national government by the Constitution,* it was not the system exclusively or even predominantly practiced by the States at the time of adoption of the Fourteenth Amendment, it is not predominantly practiced by the States today.' Secondly, says the Court, unless legislative districts are equal in population, voters in the more populous districts will suffer a 'debasement' amounting to a constitutional injury. As the Court explains it, 'To the extent that a citizen's right to vote is debased, he is that much less a citizen.' We are not told how or why the vote of a person in a more populated legislative district is 'debased,' or how or why he is less a citizen, nor is the proposition self-evident. I find it impossible to understand how or why a voter in California, for instance, either feels or is less a citizen than a voter in Nevada, simply because, despite their population disparities, each of those States is represented by two United States Senators.

"*To put the matter plainly, there is nothing in all the history of this Court's decisions which supports this constitutional rule. The Court's draconian pronouncement, which makes unconstitutional the legislatures of most of the 50 States, finds no support in the words of the Constitution, in any prior decision of this Court, or in the 175-year political history of our Federal Union.* . . . The rule announced today is at odds with long-established principles of constitutional adjudication under the Equal Protection Clause, and it stifles values of local individuality and initiative vital to the character of the Federal Union which it was the genius of our Constitution to create.

"What the Court has done is to convert a particular political philosophy into a constitutional rule, bind-

ing upon each of the 50 States, from Maine to Hawaii, from Alaska to Texas, without regard and without respect for the many individualized and differentiated characteristics of each State, characteristics stemming from each State's distinct history, distinct geography, distinct distribution of population, and distinct political heritage. . . . .

"The Court today declines to give any recognition to these considerations and countless others, tangible and intangible, in holding unconstitutional the particular systems of legislative apportionment which these States have chosen. Instead, the Court says that *the requirements of the Equal Protection Clause can be met in any State only by the uncritical, simplistic, and heavy-handed application of sixth-grade arithmetic.*

". . . And the further fact is that throughout our history the apportionments of State Legislatures have reflected the strongly felt American tradition that the public interest is composed of many diverse interests, and that in the long run it can better be expressed by a medley of component voices than by the majority's monolithic command. What constitutes a rational plan *reasonably designed to achieve this objective* [i.e., the important goal of ensuring a fair, effective, and balanced representation of the regional, social, and economic interests within a State] *will vary from State to State, since each State is unique, in terms of topography, geography, demography, history, heterogeneity and concentration of population, variety of social and economic interests, and in the operation and interrelation of its political institutions. . . .*"

In *Reynolds v. Sims*, 377 U.S., supra, Mr. Justice HARLAN, dissenting, said (pp. 602-603, 607, 614-615):
". . . Of the 23 loyal States which ratified the Amendment before 1870, five had constitutional provisions for apportionment of at least one house of their respective legislatures which wholly disregarded the spread of

population. Ten more had constitutional provisions which gave primary emphasis to population, but which applied also other principles, such as partial ratios and recognition of political subdivisions, which were intended to favor sparsely settled areas. *Can it be seriously contended that the legislatures of these States, almost two-thirds of those concerned, would have ratified an amendment which might render their own States' constitutions unconstitutional?"*

"It is *incredible* that Congress would have exacted ratification of the Fourteenth Amendment as the price of readmission, would have studied the State Constitutions for compliance with the Amendment, and would then have disregarded violations of it."

". . . In my judgment, *today's decisions are refuted by the language of the Amendment which they construe* and by the inference fairly to be drawn from subsequently enacted Amendments. *They are unequivocally refuted by history and by consistent theory and practice from the time of the adoption of the Fourteenth Amendment until today."*

Notwithstanding my aforesaid views and convictions, the Supreme Court of Pennsylvania is Constitutionally bound to obey and, whenever necessary, carry out or implement the decisions of the Supreme Court of the United States. Accordingly, we mandated the Legislature of Pennsylvania to reapportion or redistrict (within a year) the Legislative and Senatorial Districts of our State, in accordance with the standards promulgated by the Supreme Court of the United States. See *Butcher v. Bloom,* 415 Pa., supra. Districting and redistricting are primarily the duty, obligation and responsibility of the Legislature. Nevertheless, in over a year's time the Legislature failed to carry out this Court's reapportionment mandate, although, if its members had been able to put aside partisan politics and personal ambitions, they would have been es-

pecially qualified for this task. They had a *composite knowledge* and the particular and essentially important qualifications, because of their widespread representation (209 Representatives and 50 Senators) and their personal knowledge of the various and varied and the common or diverse interests of virtually every community in every part of the State. The result of this failure was that the very unpleasant duty of reapportioning the Legislative and Senatorial Districts of Pennsylvania fell upon the Supreme Court of Pennsylvania.

This was an exceptionally difficult task for our Court because it involved not merely the solution of Constitutional and legal questions—a field with which we are familiar—but the delineating of 200 or more different political Representative districts and 50 Senatorial districts, with only the four above mentioned Constitutional standards to guide us. The political subdivisions or districts of our State are inextricably intermixed with political, social, economic, traditional, homogenous, county and regional factors, plus many other important varied and diverse interests with *the details* of which a Court is not and cannot be familiar. Moreover, although 30 *different* redistricting plans* were submitted to this Court, they did not furnish *adequate* facts or information which would enable us to wisely redistrict the entire State *if we take into consideration not merely population, compactness and contiguity, but also the many important additional factors, hereinbefore and hereinafter mentioned.*

It would be relatively easy to take a paper and pen and, applying "only the uncritical, simplistic and heavy-handed application of sixth grade arithmetic,"** draw

---

* We note, in passing, that the plan for redistricting the Senate, which was passed by the Senate, was Constitutionally defective.

** Dissenting Opinion of Mr. Justice STEWART and Mr. Justice CLARK in *Lucas v. Colorado Gen. Assembly*, 377 U.S., supra, page 750.

a dozen different and Constitutionally valid plans dividing the State into Senatorial and Legislative Districts which would be (a) contiguous, (b) compact and (c) "as nearly equal in population as is practicable," and (d) with no invidious discrimination. However, I am convinced that in addition to these four basic Constitutional standards prescribed by the Supreme Court of the United States, every fair and wise districting or redistricting plan would have to include a consideration of the many varied interests of each district. These would include such factors as homogeneous groups, their commercial, industrial, economic, social, cultural, spiritual, county, and regional interests, their interests arising from their national origin, their special wants and needs, their different historical and political heritage, their language differences, and their different customs, traditions and way of life. Moreover, I believe that large minority groups are entitled to representation, whenever reasonably possible. In some of these fields, I repeat, we do not have sufficient information, nor have these very important facts and criteria been *adequately* furnished to us by anyone, nor are we, within the short time available, in a position to obtain them. For example, it is a matter of *common knowledge* that a mountain or a river or a large body of water, and sometimes a modern highway, often so separates neighboring people that many or most of the interests, customs, traditions and way of life of the people on one side thereof are very different from those of the people on the other side. An outstanding example of fundamental differences would be that of Philadelphians on the one hand and, on the other hand, the Amish, the Mennonites, the Dunkards, and other wonderful people often popularly called the plain people. The language, the interests, the religious beliefs, the customs, traditions and way of life of the plain people—indeed, their very different and distinctive

dress—are so different from those of Philadelphians that to combine them in one district, if these communities were compact and contiguous, would be absolutely ridiculous.

For these reasons, I cannot agree *fully* with any of the 30 different plans submitted to this Court, *nor in toto* with the plans formulated and the views set forth in the majority Opinion, or in the Opinion by Justice MUSMANNO. Furthermore, I strongly disagree with the views expressed by Justice EAGEN. Perhaps the biggest difference between the majority and myself is that since all or nearly all the Senators have been Unconstitutionally elected, I believe that all 50 should be Constitutionally elected in the general election next November from the new Senatorial Districts for a term of four years.* If the newly elected Legislature wishes to create staggered Senatorial terms they may validly do so.

Since I cannot persuade a majority of this Court to adopt my aforesaid views and my concept of our Government,** this creates a frustrating situation. Even

---

* Art. II, §3 of the Constitution provides: "Senators shall be elected for the term of four years and Representatives for the term of two years." Furthermore, it seems very unfair that some (25) Senators should have to run for election or re-election three times in four years.

** At a time when our boys are fighting and dying in Asia, and Washington is proclaiming to the entire world our inextinguishable desire and intent to give to peoples everywhere their inalienable right to freely choose the kind of Government they desire, it is almost incredible that a majority of Congress will not allow the people of our Country to vote and adopt (through Legislatures or conventions) a Constitutional amendment to eradicate or change the above mentioned recent decisions of the Supreme Court. Such an amendment (presently popularly known as the Dirksen Amendment) would enable the people of each State and the people of our entire Country to choose the kind of representative Government they desire in their particular State and in Congress. They could thereby restore the kind of Government which the people of each

though my views and recommendations cannot prevail, this Court would be derelict in its duty if we failed, as the Legislature failed, to formulate a redistricting plan for Pennsylvania. Everyone knows that no redistricting plan can satisfy everybody. Since any redistricting plan requires the approval of a majority of this Court, and since I believe that the plans set forth in the majority Opinion are Constitutional and are better than any other plan which has been submitted, I am forced to *join in* the Reapportionment and Redistricting plans set forth in the majority Per Curiam Opinion.

_____

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I join in the Court's Senate districting plan reluctantly, despite my strong disagreement with the majority's decision to limit the term of office of Senators to be elected from odd numbered districts[1] in the forthcoming election to two years. However, in view of the imminence of the 1966 elections, the importance of a prompt decision persuades me to support the majority's Senate plan notwithstanding my disagreement with the two year term limitation. I do so in order to ensure

_____

State as well as of our entire Country have enjoyed ever since we became the United States of America—a representative Government which has enabled us in a relatively short period of time to become the greatest nation in the world.

[1] The odd or even numerical designation of all senatorial districts was fixed by the Legislature. The vast majority of these designations can be traced back at least as far as 1921. See Act of May 10, 1921, P. L. 449. With minor exceptions, these same designations were retained in the 1964 Act, Act of January 9, 1964, P. L. (1963) 1432, 25 P.S. §2217 (Supp. 1965), and in Senate Bill 1162 of the 1965 Session. The Senate plan adopted by the Court in no way changes the odd or even numerical character assigned to any senatorial district by the Legislature. The Court merely accepted, retained and utilized the Legislative numbering system.

that a constitutionally valid districting plan be made available to the voters of the Commonwealth for the 1966 elections.

I regret, however, that this Court failed to produce an apportionment plan for the House which was at least as acceptable as that achieved for the Senate. This failure is all the more disappointing in view of the fact that the task confronting this Court in reapportioning the House was no more difficult, if not considerably easier, than that involved in districting the Senate. The unsatisfactory result achieved compels me to dissent from the majority's apportionment plan for the House of Representatives.

I

In joining in the Senate plan, I am acquiescing in certain provisions (other than the two year term limitation) which are not entirely to my satisfaction. My decision to do so, and to concede my differences, is based primarily on my belief that the plan adopted is both in conformity with constitutional imperatives, and, on balance, a fair and sound accommodation of the varying and divergent solutions constitutionally and realistically available to this Court. Moreover, the difficulties and complexities involved in the implementation of our adjudication of September 29, 1964,[2] the magnitude of the task, and its essentially legislative rather than judicial nature creates a situation not conducive to unanimity of agreement. Under such circumstances, satisfied that the plan is constitutional, and on the whole sound, I do not feel it appropriate that I condition my joinder on complete agreement with all aspects of the plan.

The primary objective of this Court in the task of implementing our previous decision in this case was

---

[2] *Butcher v. Bloom*, 415 Pa. 438, 203 A. 2d 556 (1964).

368

the establishment of legislative districts substantially. equal in population[3] in conformity with the requirements of both the Federal Constitution and the Constitution. of this Commonwealth.[4] In my view, an examination of the plan here adopted discloses that our objective has been realized.

Analysis of the plan reveals that deviation from the apportionment norm has been restricted to a minimum. level. 66 per cent of the senatorial districts created deviate from the norm by less than 5 per cent; 78 per cent of the districts deviate by less than 6 per cent; 84 per cent deviate by less than 7 per cent; 88 per cent deviate by less than 8 per cent; and no district deviates beyond 9.8 per cent from the ideal.[5] As a result, one of the

---

[3] See *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362 (1964); *Butcher v. Bloom*, 415 Pa. 438, 203 A. 2d 556 (1964).

[4] *Butcher v. Bloom*, 415 Pa. 438, 462-63, 203 A. 2d 556, 570-71 (1964).

[5] 96 per cent of the districts under the present plan, or all but 2, deviate by less than 9 per cent from the apportionment norm. The remaining 2 districts, numbered Districts 34 and 26, presented special problems because of peculiarities of geography and population. District 34, consisting of the Counties of Cameron, Centre, Clearfield, and Clinton, contains the lowest number of inhabitants. of any district in the plan, and deviates by 9 per cent from the norm. However, the district consists of a contiguous and compact area of 3562 square miles and embraces more than 4 times the total area of both Philadelphia (127 square miles) and Allegheny (730 square miles) Counties. Since this deviation is well within constitutional tolerance, a further reduction, which could only be accomplished by the fracturing of county boundary lines, did not appear justified in view of the size of the area already embraced and the nature of the adjoining area.

District 26, located within Delaware County, embraces an area of high population density and is composed of 12 boroughs and 8 townships. It contains a population of 248,695, the highest of any district in the plan and deviates by 9.8 per cent from the ideal. No significant reduction in this deviation was possible, however, without invading the integrity of municipal subdivisions or affecting adjoining districts. In light of the minimal nature of the de-

more obvious and desirable features of today's adjudication is that the election of a majority of the Senate may not be accomplished by districts containing less than 50.1 per cent of the population of the Commonwealth.[6]

Thus, these figures reveal that the invidious discrimination which existed under the senatorial districting act[7] invalidated in our earlier adjudication has been eliminated. Moreover, this has been accomplished under today's plan without the enforcement of such mathematical exactness as would unnecessarily invade the integrity of governmental subdivisions and county lines while adding little to the quality of representative processes.[8]

---

viation, the dislocation which would result from such an invasion did not appear necessary or justified.

Compare the Supplemental Report of the Advisory Council on Reapportionment to the Legislature of the State of New York, dated January 17, 1966. The Council, in its amended recommendations, justified deviations extending to 10.8 per cent in order to increase materially the number of county lines preserved intact, thus reversing a previous recommendation which sought to hold maximum deviations to a somewhat lesser level.

[6] This figure is obtained by calculating the percentage of the total population of the Commonwealth which is embraced by the 26 least populous senatorial districts. Under the Senate plan adopted today, 5,666,879 persons, out of the total population of 11,319,-366, reside in areas embraced by these 26 districts. The 1964 act invalidated by this Court in our prior adjudication permitted districts containing a minority of 44.02 per cent of the total population of the Commonwealth to elect a majority of the membership of the Senate.

[7] The Act of January 9, 1964, No. 2, P. L. (1963) 1432, 25 P.S. §2217 (Supp. 1965).

[8] So long as the resulting plan does not submerge the overriding objective of substantial equality of population among legislative districts, "a State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and provide for compact districts of contiguous territory in designing a legislative apportionment scheme. Valid considerations may un-

370

Equal attention and consideration has been given to the need for the plan adopted to yield compact districts of contiguous territory. An examination of the Court's plan reveals that these constitutional objectives have been realized and harmonized with the equality of population principle and other guidelines set forth by the Supreme Court of the United States and this Court in our previous opinion in this case. On the whole, the accommodation which both the Federal and State Constitutions compel, and which this Court has sought, has been satisfactorily achieved. Thus, although the plan is not perfect or ideal, it is constitutional and possesses sufficient merit to persuade me to join in its adoption.

However, as I have previously noted, I am disturbed by the unnecessary and unwise provision in the Court's plan limiting Senators to be elected from odd numbered senatorial districts to less than a full four year constitutional term. In my view, such restriction is not mandated by the Federal Constitution and is inconsistent with Article II, §3 of the Constitution of this Commonwealth which provides, "Senators shall be elected for the term of four years . . . ." I entertain grave difficulties with a construction of that provision which limits its reach to one half of the Senate while denying its effect to the remaining membership.

Once this Court concluded that all 50 Senators were constitutionally required to stand for election in the 1966 general election, that determination, in my view,

derlie such aims. Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering . . . ." *Reynolds v. Sims*, 377 U.S. 533, 578-79, 84 S. Ct. 1362, 1390 (1964).

Moreover, the utilization of existing county units as the building block of the plan here adopted has the additional advantage of preserving established and convenient electoral units for the voters and, thus, avoiding unnecessary dislocation of local election machinery.

should have been controlling and required that all senatorial seats be filled for a four year constitutional term. I believe that the Supreme Court of Illinois,[9] with the approval of the Federal District Court for Northern Illinois,[10] correctly decided the issue when it recently held that the entire membership of the Senate of that State would stand for election in 1966 for full four year terms notwithstanding a state constitutional provision providing for staggered senatorial terms. However, because I am unable to persuade a majority of this Court to require *all Senators* to run for a *four year term,* and having made clear my views on this aspect of the Senate plan and my disapproval of the two year limitation, I most reluctantly concur in the Senate plan adopted by the majority.

Some comment on the plan embodied in Senate Bill No. 1162[11] would seem appropriate at this juncture. That plan did not commend itself to a majority of this Court because certain of its provisions appeared both inequitable and unconstitutional.

The most fundamental failing of that proposal was the fact that it was obviously structured and designed to insulate 25 senatorial incumbents, elected in 1964, from standing for election in 1966. The undesirability, if not unconstitutionality, of such an approach is indicated by the fact that many of the districts represented by these incumbents would undergo, under the Bill, an infusion of voters from areas previously embraced by other senatorial districts. As a result of this transition, voters would be represented by a Senator in whose

---

[9] *People ex rel. Engle v. Kerner,* 33 Ill. 2d 11, 210 N.E. 2d 165 (1965).

[10] Id. at 167.

[11] Senate Bill No. 1162 (Printers No. 1466) was passed by the Senate of the General Assembly during the 1965 Session. The measure did not, however, secure approval of the House of Representatives, but was embodied in one of the plans submitted to this Court for consideration.

selection they were not afforded an opportunity to participate.[12]  Thus, by permitting 25 incumbents to complete a full four year term, Senate Bill 1162 would disenfranchise significant numbers of voters by depriving them of a choice as to their Senator until 1968, an additional two years.  It is clear that any plan which practically and effectively delays reapportionment for such substantial numbers of voters for an additional two year period is both undesirable and unacceptable.

Another aspect of the plan proposed in Senate Bill 1162 which militated strongly against its acceptability is the unnecessarily large deviation of the districts there created from the apportionment norm.  At least 1 out of every 5 districts set up under Senate Bill 1162 deviates from the apportionment ratio by 10 per cent or greater.  Three districts deviate by 13 per cent or more and one reaches to a variance of greater than 14 per cent beyond the ideal.[13]  One result of these dis-

---

[12] An illustration of such an infusion may be seen by an examination of District 25 proposed under Senate Bill 1162.  Crawford and Forest Counties, containing a total population of 82,441, were added to the areas embraced by District 25.  Thus, under Senate Bill 1162, the voters of these additional counties would be represented by the incumbent until the 1968 general election even though they were not eligible to participate in his selection.  A similar result would have obtained in District 23, where Lycoming County, containing a population of 109,367 people, was added to the area embraced by that district; District 33, where Juniata, Fulton, Huntingdon, and Mifflin Counties, containing a total population of 110,276 people, were added to the area embraced by that district.  Analysis of the 25 districts involved reveals that areas embracing approximately 800,000 persons were added to districts represented by Senators elected in 1964 and, under the Bill, not required to stand for election until 1968.

[13] The extent and number of deviant districts may well be accounted for by the fact that the Bill as structured was designed to preserve the senatorial seats of those Senators elected in 1964.  As a result, a certain rigidity was introduced which limited the avail-

parities and the extent of deviation permitted under Bill 1162 is that districts containing 49.1 per cent of the population of the Commonwealth would be able to elect a majority of the membership, and thus achieve control, of the Senate.[14]

Thus, although exact mathematical equality among legislative districts is not required by the Federal or State Constitution, a greater regard for the "one man, one vote" principle than is apparent in Bill 1162 is clearly desirable. That such a regard is practical and attainable is convincingly indicated by the result achieved under the plan adopted today.[15]

------

able avenues for reducing deviation from the apportionment norm. Thus, under Senate Bill 1162, District 33, containing a population of 198,257, adjoins District 30, which contains a population of 257,-171. That district adjoins Districts 32 and 39, which contain populations of 258,003 and 258,407 respectively. But for the attempt to tailor the plan to preserve certain districts, a more equitable distribution of population would have been possible. Moreover, because of the limited avenues available to equalize population among the districts, the following district was created: Mercer and Crawford Counties, traditionally one senatorial district, were divided and Crawford County, bounded on the West by the Ohio State line, was joined with an area to the East to form a district extending over 180 miles eastward, a distance greater than half-way across the width of the State. This result obtained notwithstanding the fact that when joined to form a single district, Mercer and Crawford Counties contain a population which does not deviate significantly from the apportionment norm.

[14] Under Senate Bill 1162, the 26 least populous districts contain a total population of 5,560,339, 49.1 per cent of the total population of the Commonwealth.

[15] The constitutional and practical significance of the fact that under Senate Bill 1162 districts containing a minority of 49.1 per cent of the population of the State could elect a majority of the Senate, when contrasted with the 50.1 per cent achieved under the Court's plan, is indicated by the results of the 1960 Presidential Election. In that election, the popular vote plurality was approximately 112,000, a margin of only .0016 per cent of the electorate.

II

My disagreement with and dissent to the majority's House plan is based primarily on its failure to observe the equal population principle and other guidelines mandated by the controlling decisions of the Supreme Court of the United States and set forth in our earlier opinion in this case. Unfortunately, the plan adopted by the majority permits representative districts embracing 47.03 per cent of the population of the Commonwealth to elect a majority of the 203 members of the House.[16]

Moreover, as undesirable, unnecessary, and unfair as that overall apportionment is, its imperfection is compounded by the serious and glaring population disparities between individual representative districts.

In my view, the majority, in formulating its House plan, unwisely proceeded on the unsupported assumption that the House apportionment norm of 56,597 might be exceeded by as much as 15 per cent or reduced by a like percentage. Thus, the Court's plan contains a number of legislative districts which reach to that, in my view, excessive level of deviation. For example, District 149, containing a population of 64,-529, deviates by 14 per cent above the norm. On the other hand, District 99, with a population of 47,908, is 15.3 per cent below the House norm.[17]

While I fully recognize that some minor deviation from the population norm, made necessary by considerations seeking to preserve the integrity of local gov-

---

[16] Under the majority's House plan, the 102 least populous districts contain 5,323,964 inhabitants, 47.03 per cent of the total population of the Commonwealth.

[17] For some further illustrations of large population disparities, see House Districts, 8, 26, 139, 176 (substantially above the apportionment norm), and Districts 48, 59, 61, and 63 (substantially below the apportionment norm).

ernmental subdivisions or to retain some convenient and realistic units for voters and the efficient functioning of local election machinery, is acceptable, the population disparities which the majority here countenances are without compelling reason or necessity. Under such circumstances, I cannot approve of the result achieved and must dissent from the House apportionment plan adopted today.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Supreme Court of the United States decided, through a series of decisions, that the districts of the various State legislatures must be reapportioned on a one-person one vote basis, thereby overruling many state districting laws which had theretofore prevailed. In effect, as Chief Justice BELL says in his Concurring Opinion, each House of the State Legislatures (a) must have substantial equality of population among the various districts, (b) the districts must be compact and contiguous, and (c) there must be no invidious discrimination.

This Court, with those criteria before it, set out to re-carve the Commonwealth of Pennsylvania so that in the end it might look, representatively speaking, like the ideal State envisioned by the Supreme Court of the United States. I am afraid that the result announced by the Majority of this Court presents a map bearing little resemblance to the pragmatic representative perfection asked for by the highest court of the land. As I survey the terrain mapped out by the Majority of this Court I see marshes of inequality, swamps of uncompactness, bogs of invidious discrimination and barren wastes of unconstitutional performance.

Legislative redistricting is not a matter of technical jurisprudence. It is simply the application of uncomplicated criteria to the raw materials of population, geography, topography, rivers and other natural bound-

aries, as well as commercial, industrial, economic, social, cultural and regional interests. No one could be more familiar with these factors than the popularly elected representatives in the various districts.

Thus, the State Senators, each representing a different district, each primarily concerned with his own local obligations, and each ardently championing his political views, nevertheless, through the process of discussion and analysis, and each keeping before him at all times the criteria laid down by the Supreme Court of the United States and this Court, agreed, by a nearly unanimous vote of 47 to 1, on a plan, which was constitutional, fair, equitable and representative of all the many interests involved. No senatorial district under the Senate plan exceeded the 15% variation from the norm of population allotted to each of the 50 senatorial districts. Under the Senate plan, the districts were compact, homogeneous and as equally peopled as the natural barriers, contours, and population concentrations of the State permitted.

Not only did this plan squarely meet all the reapportionment criteria and resolve them correctly, but it was the result of bi-partisan consideration. The Republican and the Democratic senators agreed to it, so that it could not be said that one party derived any undue advantage over the other. With each side naturally and earnestly striving for a superior position, nevertheless the Republicans and Democrats came to a common understanding and wrote it into a Senate bill which, with but one adverse vote, received the unanimous approval of the upper chamber of the Pennsylvania Legislature.

Nothing could have and should have more appealed to this Court as a demonstration of excellent, fair and equitable work done by the representatives of the people than this Senate plan. I urged this Court to accept it. The Majority rejected it. In doing so I believe it

committed a grievous error, and then it proceeded to magnify the error by the manner in which it proceeded from that point.

Our Court is an appellate court. With very few exceptions it is our business to review decisions of lower courts based on the records made in those tribunals. But there was no such record in this case. We did not even hear arguments on the case. Nor did we take original jurisdiction. Thus this Court, in a bizarre procedure acting neither as a trial court nor as an appellate court, served, in effect, a writ of certiorari on a finding by the legislature. With the definitive division of our government into three independent branches, this judicial invasion of the Legislature's prerogatives should be enough to cause the architects of our form of government to stir in their tombs and soliloquize.

It is true that this Court acted in an appellate fashion when it sat on the case of *Butcher v. Bloom,* 415 Pa. 438, and it is true that it retained jurisdiction of the case, but it is also true that it referred the matter of reapportionment to the Legislature and, although both Houses did not enact a final reapportionment law, the Senate, as above stated, practically unanimously approved of a reapportionment plan for the Senate. Why didn't this Court take that plan?

The Majority does not analyze the Senate plan. It merely rejects it. It jettisons the findings of the most knowledgeable persons on the subject. While the Senate plan in some instances showed districts with an appreciable difference in population figures, the districts always stayed, as above stated, within the variation percentage allowed. The plan submitted by the Majority shows districts varying in population density with a differential as high as 43,000.

Before this Court undertook to veto the will of the people, as spoken by the State Senators elected by the people, it should at least have had evidence on which

to act. It might have appointed a commission; it might have designated a master to take testimony; it might have done a number of things to guarantee due process under the 14th Amendment to the Constitution of the United States. It did none of these things.

In *Butcher v. Bloom,* supra, this Court said quite properly: "The task of reapportionment is not only the responsibility of the Legislature, it is also a function which can be best accomplished by that elected branch of government. *The composition of the Legislature, the knowledge which its members from every part of the state bring to its deliberations, its techniques for gathering information,* and other factors inherent in the legislative process, *make it the most appropriate body for the drawing of lines dividing the state into senatorial and representative districts."* (Emphasis supplied.)

This Court accordingly then, in September, 1964, sent the reapportionment problem to the Legislature and the Legislature moved at once to the fulfillment of its mammoth task. It cannot be emphasized too strongly that the only body charged by the Constitution with reapportionment is the Legislature. Its findings, therefore, are entitled to maximum constitutional deference. In appreciation of its constitutional duties, the Legislature held hearings, it sent investigating committees throughout the State. It took testimony. The multifarious details inherent in a gigantic reapportionment of legislative districts for 11,319,366 people were discussed, analyzed and debated. There were innumerable conferences between the Senate and the House and its respective members through specially appointed committees.

One would assume that this Court would, therefore, look with great respect upon the findings made by the Legislature. The Opinion of the Majority manifests that it more or less ignored this great work accom-

plished by the highly skilled surveyors in the domain of statewide reapportionment. Instead of accepting the Senate agreements, the Court set about to accomplish reapportionment itself, armed with inadequate surveying instruments and other appropriate engineering equipment. And now the Majority has submitted its result, which clearly manifests the erratum committed in not assigning to the legislative findings the consideration they constitutionally deserved. I repeat that the Majority decision violates the Fourteenth Amendment and other provisions of the constitution of the United States, it fails to follow the criteria laid down by the Supreme Court of the United States and, in fact, the decisions of this very Court itself.

In *Butcher v. Bloom*, this Court said, in interpreting our organic law, that there is a constitutional "intention to respect county lines and to utilize counties as units of representation to the maximum extent consistent with the equal-population principle." Of course, it was impossible not to cross some county lines. The Senate plan held county invasion down to eight crossings, the Majority Plan mandates thirteen such trespasses.

The Majority plan, aside from other constitutional and legislative encroachments, violates rules of apportionment, as well as of fairness in the matter of its numbering of senatorial districts. The State has fifty such districts, numbered necessarily odd and even. Strange as it may seem, it often happens that whether a district has an odd or even number determines to a considerable degree whether that district will elect a Republican or a Democratic senator in given election years. Statistics appear to indicate that in some districts the Republican or the Democratic candidates have a better chance of winning, depending on whether that particular election falls within a presidential election year or a gubernatorial election year. Thus, for-

380

tuitously, but nevertheless in the natural law which sometimes governs chance and fate, advantages or disadvantages attend the candidates according to the number their districts bear.

The numbering of senatorial districts, in order to achieve any order of methodical sequence, should begin at one end of the State and proceed, with some semblance of consecutiveness, to the other end of the State. The numbering should proceed horizontally, clockwise, counter-clockwise, or up and down the State in vertical segments, but it should not leapfrog. For instance, if the numbering is to begin in Philadelphia, which has nine senatorial districts, the most natural process of numbering would be from 1 to 9. No comparison can be made here with the Senate plan because that plan called for the election of only 25 Senators, whereas the Majority plan calls for the election of all 50 Senators, even if for staggering terms.[1]

The Majority, in numbering the Philadelphia districts, did not follow the numerical sequence of 1 to 9. It used the numbers 1 to 8, and then, even though not confronted with the problem of avoiding districts not coming up for election, wholly unnecessarily jumped to No. 36. In the adjoining Delaware County or portions thereof, the numbers became 9, 17 and 26. In another contiguous county or portions thereof, Mont-

---

[1] It is true that the Legislature, in creating a new senatorial district in Philadelphia, numbered it 36, but special circumstances brought this about. The district originally numbered 36 was under-populated as a district and was absorbed into number 30. Another reason is that the newly created seat was to be filled in the next election, under the staggered plan of election, which, of course, followed the odd-and-even number sequence. This numbering however was not controlling on this Court. Therefore, since the majority renumbered the districts on a State-wide basis, there is no reason why logically it should not have given to the new Philadelphia district the number 9, so that it would adhere to a sensible, consecutive numbering.

gomery, the numbers gambolled through 12, 17 and 24. Then District 21 kangarooed between 41 and 47, or between 47 and 50, depending on the direction of the approach. A glance at the map, under the Majority plan, shows a chaotic jumble of numbers, which, however, when studied in connection with local conditions, will show not chaos, but a very planned arrangement to achieve certain partisan results which certainly fall within the inhibition of invidious discrimination. This kind of maneuver could influence the election or defeat of candidates depending on whether the election year is a presidential or gubernatorial one. It has been said that gerrymandering can be accomplished sometimes as effectively by numbers as well as by formulation of strangely-shaped election districts.

In view of the fact that the date for distributing nominating petitions in the May primaries is imminent, the decision of the Court in this case should be filed without delay. Thus, time being of the essence, I cannot write an extended Dissenting Opinion in which I would enumerate and discuss the other areas in which I believe the Majority violated the Federal and the State constitutions. I will linger long enough to address my attention to one (of the many) major unconstitutional provisions in the Majority's plan for reapportionment of the House of Representatives.

The Majority has awarded to Bucks County six House seats. Article II, §17 of the State Constitution declares, inter alia, that "The members of the House of Representatives shall be apportioned among the several counties, on a ratio obtained by dividing the population of the State as ascertained by the most recent United States census by two hundred. Every county containing less than five ratios shall have one representative for every full ratio, and an additional representative when the surplus *exceeds* half a ratio . . . Every county containing five ratios or more shall have

one representative for *every full ratio*." (Emphasis supplied.)

Under this section the ratio per representative in Pennsylvania is 56,597. Bucks County, with a population of 308,567 is, therefore, entitled to 5.45 representative ratios. Since .45 is not a half and certainly not a full ratio, Bucks is not entitled to six representatives under either ratio definition above quoted. The Majority, in an outright repudiation of the cited constitutional provision, has awarded six House seats to Bucks County. This arbitrary usurpation of legislative power can in no way be justified.

If it would be argued that, making the computation in reverse, each district would number a population of 51,000, and thus only 10% below the representative ratio, this, generally speaking, would not be abnormal if it involved only a *single* representative. Here, however, the minus ratio is repeated in six contiguous districts. Bucks County thus becomes over-represented at the expense of other parts of the State. If the Majority plan for awarding seats in Bucks County were to be followed in Philadelphia and Allegheny Counties, Allegheny County would be entitled to three more seats, and Philadelphia County to four additional seats. It must be quite clear, therefore, that the Majority plan, by assigning an advantage to Bucks County, which is denied all other counties in the State, offends against the prohibition of invidious discrimination.

In a tight election between the two predominant political parties in Pennsylvania, the election of an additional representative by one party in Bucks County could determine which party would control the House of Representatives. This would mean that legislation affecting the entire Commonwealth could be determined in a closely controverted issue, along partisan lines, by this one single vote which has been handed to Bucks County by the Majority on an unconstitutional silver platter.

For these reasons and others for which time will not permit discussion or even enumeration, I dissent.

---

OPINION BY MR. JUSTICE EAGEN DISSENTING IN PART:

I cannot in good conscience even condone the redistricting plan of the Senate of the Commonwealth as decreed by a Majority of my brethren on the Court. As to this part of the decision, I must, therefore, emphatically dissent.

While some fixed constitutional standards were generally followed in the planning and composition of all of the senatorial districts, it is, and will be, readily apparent to knowledgeable people that in the planning and composition of districts in a substantial number of areas, considerations other than judicious and legal were regretfully permitted to interfere. As a result, the total senate plan is basically unfair, and will result in control of that body remaining in the hands of one certain political party for all future time.

The House of Representatives and the Senate of Pennsylvania have previously always legislated their own districts. That the task has been "well" done is clearly indicated by the results. With the exception of one two-year period (immediately following the Roosevelt "landslide" election of 1936), the same political party has continuously enjoyed majority control of the Senate of Pennsylvania during the present century.[1] Unfortunately, today's decree of this Court follows the same unfair pattern.

Assuming, arguendo, that the Majority's plan for redistricting the Senate conforms to the letter of the law, it is certainly violative of the spirit of the United States Constitution and the recent decisions of the United States Supreme Court, and presents the same

---

[1] This condition has persisted even though in recent years the political fortunes of the two major political parties have pointedly vacillated with one holding the edge in registration and voting results for a period of time, and then the other.

type of situation that prompted the unprecedented action of the United States Supreme Court in assuming jurisdiction and ordering relief in the case of *Baker v. Carr*, 369 U.S. 186 (1962).

I fear also the constitutional validity of the Majority's senate redistricting plan for other reasons. The 1960 census population of Pennsylvania was 11,319,-366. The Constitution of Pennsylvania provides for fifty senatorial districts. The perfect representative ratio would, therefore, constitute 226,387. While I recognize that it is impossible for very practical reasons to achieve the perfect norm, I believe that it was incumbent upon us to do so as far as it was reasonably possible. As we stated in *Butcher v. Bloom,* 415 Pa. 438, 465, 203 A. 2d 556 (1964), "Those whose task it is to reapportion the Pennsylvania Legislature must approach their assignment with the understanding that they are to create districts which are *as nearly equal in population as is practicable.*" (Emphasis added.) To the same effect see, *Reynolds v. Sims,* 377 U.S. 533, 84 S. Ct. 1362 (1964).

Despite this constitutional requirement, I note that in the senatorial plan decreed by the Majority, there exists wide divergence of total population in several districts. For example, District No. 34 includes a total population of only 205,319, while District No. 26 includes 248,695. This means that the senator in District No. 26 will represent 43,376 or 21% more people than the senator in District No. 34.

While it may be argued that the low composite population in District No. 34 and in similar situations was necessarily achieved in order not to break county lines, this position does not hold water, particularly in reference to District No. 26, which is located in an area where county lines were crossed in order to reach the population figure. The imbalance noted hardly effectuates or conforms with the equal protection provision of the United States Constitution.